## ESTELLE, CORRECTIONS DIRECTOR *v.* WILLIAMS

No. 74–676.   Argued October 7, 1975—Decided May 3, 1976

BURGER, C. J., delivered the opinion of the Court, in which STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. POWELL, J., filed a concurring opinion, in which STEWART, J., joined, *post,* p. 513.   BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post,* p. 515.   STEVENS, J., took no part in the consideration or decision of the case.

*Dunklin Sullivan,* Assistant Attorney General of Texas,

argued the cause for petitioner. With him on the brief were *John L. Hill,* Attorney General, *David M. Kendall,* First Assistant Attorney General, and *Joe B. Dibrell* and *Lonny F. Zwiener,* Assistant Attorneys General.

*Ben L. Aderholt,* by appointment of the Court, 421 U. S. 907, argued the cause and filed a brief for respondent. [REPORTER'S NOTE: *Mr. Aderholt* represented the respondent before this Court only. Cf. *post,* at 513–514, 514, and 523.]

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case to determine whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws.

In November 1970, respondent Williams was convicted in state court in Harris County, Tex., for assault with intent to commit murder with malice. The crime occurred during an altercation between respondent and his former landlord on the latter's property. The evidence showed that respondent returned to the apartment complex where he had formerly resided to visit a female tenant. While there, respondent and his former landlord became involved in a quarrel. Heated words were exchanged, and a fight ensued. Respondent struck the landlord with a knife in the neck, chest, and abdomen, severely wounding him.

Unable to post bond, respondent was held in custody while awaiting trial. When he learned that he was to go on trial, respondent asked an officer at the jail for his civilian clothes. This request was denied. As a result, respondent appeared at trial in clothes that were distinctly marked as prison issue. Neither respondent nor his counsel raised an objection to the prison attire at any time.

A jury returned a verdict of guilty on the charge of assault with intent to murder with malice. The Texas Court of Criminal Appeals affirmed the conviction. *Williams* v. *State*, 477 S. W. 2d 24 (1972). Williams then sought release in the United States District Court on a petition for a writ of habeas corpus. Although holding that requiring a defendant to stand trial in prison garb was inherently unfair, the District Court denied relief on the ground that the error was harmless.

The Court of Appeals reversed on the basis of its own prior holding in *Hernandez* v. *Beto*, 443 F. 2d 634 (CA5), cert. denied, 404 U. S. 897 (1971). 500 F. 2d 206. The Fifth Circuit disagreed with the District Court solely on the issue of harmless error.

## (1)

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Drope* v. *Missouri*, 420 U. S. 162, 172 (1975). The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. Long ago this Court stated:

> "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States*, 156 U. S. 432, 453 (1895).

To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship*, 397 U. S. 358, 364 (1970).

The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. *Estes* v. *Texas,* 381 U. S. 532 (1965); *In re Murchison,* 349 U. S. 133 (1955). Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions,[1] determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system. *Gaito* v. *Brierley,* 485 F. 2d 86 (CA3 1973); *Hernandez* v. *Beto, supra; Brooks* v. *Texas,* 381 F. 2d 619 (CA5 1967); *Commonwealth* v. *Keeler,* 216 Pa. Super. 193, 264 A. 2d 407 (1970); *Miller* v. *State,* 249 Ark. 3, 457 S. W. 2d 848 (1970); *People* v. *Shaw,* 381 Mich. 467, 164 N. W. 2d 7 (1969); *People* v. *Zapata,* 220 Cal. App. 2d 903, 34 Cal. Rptr. 171 (1963), cert. denied, 377 U. S. 406 (1964); *Eaddy* v. *People,* 115 Colo. 488, 174 P. 2d 717 (1946). The American Bar Association's Standards for Criminal Justice also disapprove the practice. ABA Project on Standards for Criminal Justice, Trial by Jury § 4.1 (b), p. 91 (App. Draft 1968). This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identi-

---

[1] None of the authorities relied on by petitioner expressly approves the practice. Several cases hold, however, that a showing of actual prejudice must be made by a defendant seeking to have his conviction overturned on this ground. *Hall* v. *Cox,* 324 F. Supp. 786 (WD Va. 1971); *McFalls* v. *Peyton,* 270 F. Supp. 577 (WD Va. 1967), aff'd, 401 F. 2d 890 (CA4 1968), cert. denied, 394 U. S. 951 (1969).

fiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play. *Turner* v. *Louisiana,* 379 U. S. 466, 473 (1965).

That such factors cannot always be avoided is manifest in *Illinois* v. *Allen,* 397 U. S. 337 (1970), where we expressly recognized that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant . . . ," *id.,* at 344; yet the Court upheld the practice when necessary to control a contumacious defendant. For that reason, the Court authorized removal of a disruptive defendant from the courtroom or, alternatively, binding and gagging of the accused until he agrees to conduct himself properly in the courtroom.

Unlike physical restraints, permitted under *Allen, supra,* compelling an accused to wear jail clothing furthers no essential state policy. That it may be more convenient for jail administrators, a factor quite unlike the substantial need to impose physical restraints upon contumacious defendants,[2] provides no justification for the practice. Indeed, the State of Texas asserts no interest whatever in maintaining this procedure.

Similarly troubling is the fact that compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition. To impose the condition on one category of defendants, over objection, would be repugnant to the

---

[2] The contumacious defendant brings his plight upon himself and presents the court with a limited range of alternatives. Obviously, a defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts.

concept of equal justice embodied in the Fourteenth Amendment. *Griffin* v. *Illinois,* 351 U. S. 12 (1956).

### (2)

The Fifth Circuit, in this as well as in prior decisions, has not purported to adopt a *per se* rule invalidating all convictions where a defendant had appeared in identifiable prison clothes. That court has held, for instance, that the harmless-error doctrine is applicable to this line of cases. 500 F. 2d, at 210–212. See also *Thomas* v. *Beto,* 474 F. 2d 981, cert. denied, 414 U. S. 871 (1973); *Hernandez* v. *Beto, supra,* at 637. Other courts are in accord. *Bentley* v. *Crist,* 469 F. 2d 854, 856 (CA9 1972); *Watt* v. *Page,* 452 F. 2d 1174, 1176–1177 (CA10), cert. denied, 405 U. S. 1070 (1972). In this case, the Court of Appeals quoted the language of Mr. Justice Douglas, speaking for the Court in *Harrington* v. *California,* 395 U. S. 250 (1969):

> "We held in *Chapman* v. *California* that 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' We said that . . . not all 'trial errors which violate the Constitution automatically call for reversal.' " *Id.,* at 251–252 (citations omitted).

In *Chapman* v. *California,* 386 U. S. 18 (1967), the Court, speaking through Mr. Justice Black, held:

> "We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding, as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United

States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' . . . We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.,* at 21–22 (citation and footnote omitted).

In other situations, when, for example, the accused is being tried for an offense committed in confinement, or in an attempted escape, courts have refused to find error in the practice. In *United States ex rel. Stahl* v. *Henderson,* 472 F. 2d 556 (CA5), cert. denied, 411 U. S. 971 (1973), the Court of Appeals declined to overturn a conviction where the defendant, albeit tried in jail clothes, was charged with having murdered another inmate while confined in prison. "No prejudice can result from seeing that which is already known." 472 F. 2d, at 557. In the present case, the Court of Appeals concluded:

"A different result may be appropriate where the defendant is on trial for an offense allegedly committed while he was in prison, because the jury would learn of his incarceration in any event." 500 F. 2d, at 209 n. 5.

Contra: *People* v. *Roman,* 35 N. Y. 2d 978, 324 N. E. 2d 885 (1975).

Consequently, the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. The

reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury. *Anderson v. Watt,* 475 F. 2d 881, 882 (CA10 1973); *Watt v. Page, supra,* at 1176. Cf. *Garcia v. Beto,* 452 F. 2d 655, 656 (CA5 1971). This is apparently an accepted practice in Texas courts, *Barber v. State,* 477 S. W. 2d 868, 870 (Tex. Crim. App. 1972), including the court where respondent was tried.

Courts have therefore required an accused to object to being tried in jail garments, just as he must invoke or abandon other rights.[3] The Fifth Circuit has held: "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." *Hernandez v. Beto,* 443 F. 2d, at 637. The essential meaning of the

---

[3] We are not confronted with an alleged relinquishment of a fundamental right of the sort at issue in *Johnson v. Zerbst,* 304 U. S. 458 (1938). There, the Court understandably found it difficult to conceive of an accused making a knowing decision to forgo the fundamental right to the assistance of counsel, absent a showing of conscious surrender of a known right. The Court has not, however, engaged in this exacting analysis with respect to strategic and tactical decisions, even those with constitutional implications, by a counseled accused. See, *e. g., On Lee v. United States,* 343 U. S. 747, 749 n. 3 (1952). Cf. Fed. Rule Crim. Proc. 11.

The Second Circuit has noted in a different context:

"Federal courts, including the Supreme Court, have declined to notice [alleged] errors not objected to below even though such errors involve a criminal defendant's constitutional rights." *United States v. Indiviglio,* 352 F. 2d 276, 280 (1965), cert. denied, 383 U. S. 907 (1966).

The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation.

Court of Appeals' decision in *Hernandez* has been described by that court as follows:

> "We held [in *Hernandez*] that the defendant and his attorney had the burden to make known that the defendant desired to be tried in civilian clothes before the state could be accountable for his being tried in jail clothes . . . ." *United States ex rel. Stahl* v. *Henderson*, 472 F. 2d, at 557.[4]

Similarly, the Ninth Circuit has indicated that the courts must determine whether an accused "was in fact compelled to wear prison clothing at his state court trial." *Bentley* v. *Crist*, 469 F. 2d, at 856. See also *Dennis* v. *Dees*, 278 F. Supp. 354, 359 (ED La. 1968), disapproved on other grounds, *United States ex rel. Stahl* v. *Henderson, supra,* at 557; *People* v. *Roman*, 35 N. Y. 2d, at 978–979, 324 N. E. 2d, at 885–886; *People* v. *Shaw*, 381 Mich. 467, 164 N. W. 2d 7 (1969).

### (3)

The record is clear that no objection was made to the

---

[4] Significantly, in the *Henderson* case the Fifth Circuit interpreted *Hernandez* as requiring the accused to take affirmative steps to apprise the trial court of his desire to be tried in civilian clothes. The *Hernandez* court had simply found, under the circumstances presented there, that the defendant "had met his burden." 472 F. 2d, at 557. This interpretation is particularly meaningful since the author of the *Hernandez* opinion was a member of the panel in the subsequent decision in *Henderson*. Moreover, the court in *Hernandez* indicated:

"We do not paint with a broad brush these types of cases. Each case must be considered in its own factual context." 443 F. 2d, at 637.

Moreover, there is nothing in the record in *Hernandez* to suggest that the state trial judge had, as here, a longstanding practice, known to members of the bar, to permit any defendant to change into civilian clothes on request. See *infra,* at 510–511.

trial judge concerning the jail attire either before or at any time during the trial. This omission plainly did not result from any lack of appreciation of the issue, for respondent had raised the question with the jail attendant prior to trial. At trial, defense counsel expressly referred to respondent's attire during *voir dire*. The trial judge was thus informed that respondent's counsel was fully conscious of the situation.[5]

Despite respondent's failure to raise the issue at trial, the Court of Appeals held:

> "Waiver of the objection cannot be inferred merely from failure to object if trial in prison garb is customary in the jurisdiction." 500 F. 2d, at 208.

The District Court had concluded that at the time of respondent's trial the majority of nonbailed defendants in Harris County were indeed tried in jail clothes. From this, the Court of Appeals concluded that the practice followed in respondent's case was customary. *Ibid.*

However, that analysis ignores essential facts adduced at the evidentiary hearing. Notwithstanding the evidence as to the general practice in Harris County, there was no finding that nonbailed defendants were compelled to stand trial in prison garments if timely objection was made to the trial judge. On the contrary, the District Court concluded that the practice of the particular judge presiding in respondent's case was to permit any accused who so desired to change into civilian clothes:

> "There is no doubt but that the [judge] had a

---

[5] The evidence showed that respondent was a Caucasian in his sixties. At the evidentiary hearing, he testified that he felt he had no real case to present at trial. The testimony of several eyewitnesses was clear and consistent. Under these circumstances, a desire to elicit jury sympathy would have been a reasonable approach and one which the trial judge might reasonably have assumed was deliberately undertaken.

practice of allowing defendants to stand trial in civilian clothing, if requested, a practice evidently followed by certain of the other judges as well." *Williams* v. *Beto,* 364 F. Supp. 335, 343 (1973).[6]

The state judge's policy was confirmed at the evidentiary hearing by the prosecutor and by a defense attorney who practiced in the judge's court.

Significantly, at the evidentiary hearing respondent's trial counsel did not intimate that he feared any adverse consequences attending an objection to the procedure.[7] There is nothing to suggest that there would have been any prejudicial effect on defense counsel had he made objection, given the decisions on this point in that jurisdiction. Four years before respondent's trial the United States Court of Appeals for the Fifth Circuit had held: "It is inherently unfair to try a defendant for crime while garbed in his jail uniform . . . ." *Brooks* v. *Texas,* 381 F. 2d, at 624. Similarly, the Texas Court of Criminal Appeals had held: "[E]very effort should be made to avoid trying an accused while in jail garb." *Ring* v. *State,* 450 S. W. 2d 85, 88 (1970).[8] Prior Texas cases

---

[6] This was based on the state judge's affidavit, which stated in part:

"I have never compelled a defendant to go to trial in jail clothes, and on every occasion when a defendant or his attorney requested that he be allowed to wear civilian clothes at his trial I have granted the request." 364 F. Supp., at 338.

[7] Counsel testified that on a prior occasion, a different state judge had overruled his objection to the trial of his client in jail clothes. He also testified that he had seen other defendants dressed in jail garments in the courtroom where respondent was tried.

[8] The Texas courts had admittedly not established a rigid rule invalidating the practice *per se.* Instead, the courts ordinarily looked to whether actual injury or prejudice had resulted from the defendant's appearance in jail garb. *Garcia* v. *State,* 429 S. W. 2d 468, 471 (Tex. Crim. App. 1968); *Xanthull* v. *State,* 403 S. W. 2d

had made it clear that an objection should be interposed. See *Wilkinson* v. *State,* 423 S. W. 2d 311, 313 (Tex. Crim. App. 1968); *Ring* v. *State, supra,* at 88.

Nothing in this record, therefore, warrants a conclusion that respondent was compelled to stand trial in jail garb or that there was sufficient reason to excuse the failure to raise the issue before trial.[9] Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson* v. *Zerbst,* 304 U. S. 458 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

Accordingly, although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever rea-

---

807, 809 (Tex. Crim. App. 1966). But these cases provided ample grounds for objection to the procedure, since they at least implicitly recognized that reversible error could result from the practice. Similarly, the 1970 decision in *Xanthull* v. *Beto,* 307 F. Supp. 903 (SD Tex.), did not render fruitless any objection on respondent's part. Instead, that case, like various state cases, simply imposed a burden on federal habeas petitioners to show actual prejudice resulting from a jury trial in jail garments.

[9] It is not necessary, if indeed it were possible, for us to decide whether this was a defense tactic or simply indifference. In either case, respondent's silence precludes any suggestion of compulsion.

son, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.[10]

The judgment of the Court of Appeals is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Mr. Justice Stevens took no part in the consideration or decision of this case.

Mr. Justice Powell, with whom Mr. Justice Stewart joins, concurring.

I concur in the opinion of the Court. As the Court's opinion and the dissenting opinion take such divergent views of the case, I write separately to identify specifically the considerations I deem controlling.

Respondent, Harry Lee Williams, was tried while clad in prison issue. Despite differences over the relevance of "compulsion" in this case, the Court opinion and the dissenting opinion essentially agree that a defendant has a constitutional right not to be so tried. The disagreement is over the significance to be attributed to Williams' failure to object at trial.

As relevant to this case, there are two situations in which a conviction should be left standing despite the claimed infringement of a constitutional right. The first situation arises when it can be shown that the substantive right in question was consensually relinquished. The other situation arises when a defendant has made an "inexcusable procedural default" in failing to object at a time when a substantive right could have been pro-

---

[10] Petitioner has contended in his brief and in oral argument that the Court of Appeals' decision in *Hernandez* should not be applied retroactively. The petition for certiorari did not raise this issue and our disposition of the case renders it unnecessary to decide it.

tected. Hart, Foreword: The Time Chart of the Justices, 73 Harv. L. Rev. 84, 118 (1959); see American Bar Association Project on Standards for Criminal Justice, Post-Conviction Remedies 35–37 (App. Draft 1968).

Williams was represented by retained, experienced counsel. It is conceded that his counsel was fully aware of the "prison garb" issue [1] and elected to raise no objection simply because he thought objection would be futile. The record also shows that the state judge who presided at Williams' trial "had a practice of allowing defendants to stand trial in civilian clothing, if requested . . . ." 364 F. Supp. 335, 343 (1973). It thus is apparent that had an objection been interposed by Williams to trial in prison garb, the issue here presented would not have arisen.

This case thus presents a situation that occurs frequently during a criminal trial—namely, a defendant's failing to object to an incident of trial that implicates a constitutional right. As is often the case in such situations, a timely objection would have allowed its cure. As is also frequently the case with such trial-type rights as that involved here, counsel's failure to object in itself is susceptible of interpretation as a tactical choice. *Ante,* at 507–508.

It is my view that a tactical choice or procedural default of the nature of that involved here ordinarily should operate,[2] as a matter of federal law, to preclude

---

[1] Williams' counsel did not claim, nor indeed could he have claimed, that a new issue was involved. Both the Court of Appeals for the Fifth Circuit and the Texas courts had recognized that trial in prison garb could be constitutional error as an impingement upon the presumption of innocence. *Ante,* at 511–512.

[2] Even when confronted by such a procedural default, discretion might sometimes be exercised to overturn a conviction on the familiar principles of plain error. See *United States* v. *Indiviglio,* 352 F. 2d 276 (CA2 1965).

the later raising of the substantive right.[3]   We generally disfavor inferred waivers of constitutional rights.   See *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1939); *Barker* v. *Wingo,* 407 U. S. 514, 525–526 (1972).   That policy, however, need not be carried to the length of allowing counsel for a defendant deliberately to forgo objection to a curable trial defect, even though he is aware of the factual and legal basis for an objection, simply because he thought objection would be futile.[4]

Mr. Justice Brennan, with whom Mr. Justice Marshall concurs, dissenting.

I dissent.   The Court's statement that "[t]he defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors" affecting the jurors' judgment, thus presenting the possibility of an unjustified verdict of guilt, *ante,* at 505, concedes that respondent's trial in identifiable prison garb [1] constituted a denial of

---

[3] Previous cases of this Court make clear that a federal-law bar can be raised to the untimely presentation of constitutional claims. See *Fay* v. *Noia,* 372 U. S. 391, 433–434 (1963); *Henry* v. *Mississippi,* 379 U. S. 443, 451–452 (1965).

[4] The right involved here is a trial-type right.   As a consequence, an attorney's conduct may bind the client.   See *Henry* v. *Mississippi, supra,* at 451–452; cf. *Brookhart* v. *Janis,* 384 U. S. 1 (1966).   The entitlement of courts ordinarily to rely on counsel to advise a defendant and to make timely assertion of rights even when the validity of a guilty plea is at issue was a factor in *McMann* v. *Richardson,* 397 U. S. 759, 766–771 (1970).

[1] Respondent appeared at trial wearing a white T-shirt with "Harris County Jail" stenciled across the back, oversized white dungarees that had "Harris County Jail" stenciled down the legs, and shower thongs.   Both of the principal witnesses for the State at respondent's trial referred to him as the person sitting in the "uniform."   Record on Appeal in Tex. Ct. of Crim. App. 108, 141 (No. 73–3854).

due process of law. The judgment setting aside respondent's conviction is nevertheless reversed on the ground that respondent was not *compelled* by the State to wear the prison garb. The Court does not—for on this record plainly the Court could not—rest the reversal on a finding that respondent knowingly, voluntarily, and intelligently consented to be tried in such attire, and thus had waived his due process right. *Johnson* v. *Zerbst*, 304 U. S. 458 (1938). Rather, for the first time, the Court confines due process protections by *defining* a right that materially affects the fairness and accuracy of the fact-finding process in terms of state *compulsion*, a concept which, although relevant in the context of the Fifth Amendment's privilege against self-incrimination, is simply inapposite to constitutional analysis concerning due process in criminal proceedings. The end result of this definitional approach is to impute the effect of waiver to the failure of respondent or his counsel to apprise the trial judge of respondent's objection to being tried in prison garb. This not only results in an illogical delineation of the particular right involved in this case, but also introduces into this Court's jurisprudence a novel and dangerously unfair test of surrender of basic constitutional rights to which I cannot agree.[2]

---

[2] In holding that only the "compelled" wearing of prison garb is constitutionally proscribed, the Court understandably cites no precedent for its startling result. For the only area in which the concept of compulsion is relevant to the definition of a substantive right is the Fifth Amendment privilege against self-incrimination. See, *e. g., Garner* v. *United States*, 424 U. S. 648 (1976). But by its terms the Self-Incrimination Clause of the Fifth Amendment speaks only to an individual's being "compelled" to be a witness against himself; due process rights to a fair trial do not, however, depend on the existence of state "compulsion." Moreover, it is clear that even in the Fifth Amendment's self-incrimination context, where state "compulsion" is required, steps should be taken to ensure

## I

The Court concedes that respondent was denied due process of law: there is a due process violation if the State denies an accused's objection to being tried in such garb, *ante,* at 504–505, 505, 512, 512–513, and as will be developed, there is no relevant constitutional difference concerning that due process right if the accused has not objected to the practice.

One of the essential due process safeguards that attends the accused at his trial is the benefit of the presumption of innocence—"that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' " *In re Winship,* 397 U. S. 358, 363 (1970), quoting *Coffin* v. *United States,* 156 U. S. 432, 453 (1895). See also, *e. g.,* *Deutch* v. *United States,* 367 U. S. 456, 471 (1961); *Sinclair* v. *United States,* 279 U. S. 263, 296–297 (1929).

---

that constitutional rights only be knowingly and voluntarily waived. See, *e. g., Maness* v. *Meyers,* 419 U. S. 449, 466–467 (1975). See also nn. 5, 6, *infra.*

The Court's reliance on *Illinois* v. *Allen,* 397 U. S. 337 (1970), is particularly inexplicable. See *ante,* at 505. For the Court in *Allen* held that "courts must indulge every reasonable presumption against the loss of constitutional rights, *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938)," and further held that the accused could only be deprived of his right to be present at trial "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." 397 U. S., at 343. *Allen* thus requires knowing, voluntary, and intelligent waiver of the constitutional right to be present at trial, the standard that in my view also applies to trial in prison garb.

This presumption of innocence is given concrete substance by the due process requirement that imposes on the prosecution the burden of proving the guilt of the accused beyond a reasonable doubt. "The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." *In re Winship, supra,* at 363–364. The "prime instrument for reducing the risk of convictions resting on factual error," *id.,* at 363, is the reasonable-doubt standard. When an accused is tried in identifiable prison garb, the dangers of denial of a fair trial and the possibility of a verdict not based on the evidence are obvious.

Identifiable prison garb robs an accused of the respect and dignity accorded other participants in a trial and constitutionally due the accused as an element of the presumption of innocence, and surely tends to brand him in the eyes of the jurors with an unmistakable mark of guilt. Jurors may speculate that the accused's pretrial incarceration, although often the result of his inability to raise bail, is explained by the fact he poses a danger to the community or has a prior criminal record; a significant danger is thus created of corruption of the factfinding process through mere suspicion. The prejudice may only be subtle and jurors may not even be conscious of its deadly impact, but in a system in which every person is presumed innocent until proved guilty beyond a reasonable doubt, the Due Process Clause forbids toleration of the risk. Jurors required by the presumption of innocence to accept the accused as a peer, an individual like themselves who is innocent until proved guilty, may well

see in an accused garbed in prison attire an obviously guilty person to be recommitted by them to the place where his clothes clearly show he belongs. It is difficult to conceive of any other situation more fraught with risk to the presumption of innocence and the standard of reasonable doubt.

Trial in identifiable prison garb also entails additional dangers to the accuracy and objectiveness of the fact-finding process. For example, an accused considering whether to testify in his own defense must weigh in his decision how jurors will react to his being paraded before them in such attire. It is surely reasonable to be concerned whether jurors will be less likely to credit the testimony of an individual whose garb brands him a criminal. And the problem will most likely confront the indigent accused who appears in prison garb only because he was too poor to make bail. In that circumstance, the Court's concession that no prosecutorial interest is served by trying the accused in prison clothes, *ante,* at 505, has an ironical ring.[3]

In light of the effect of trial in prison garb in denying the accused the benefit of the presumption of innocence and undercutting the reasonable-doubt standard, it escapes me how the Court can delineate the right established in this case as the right not to be *compelled* to wear prison garb. If, as the Court holds, the clothes of the accused who has unsuccessfully objected to wearing prison garb (and thus is "compelled" to wear them) unconstitutionally disadvantages his case, obviously the prison clothes of the nonobjecting accused are similarly

---

[3] The Court suggests that accused persons freely choose to wear prison garb, *ante,* at 505–506, 507–508, but mentions no case of a person free on bail (and thus truly able to make a voluntary choice with respect to what to wear at trial) who asked to wear prison garb at his trial.

unconstitutionally disadvantageous. From the *jury's* perspective, the situations of the objecting and the non-objecting defendants are in every respect identical; if the clothes of the accused who has objected to the court will create improper negative inferences in the minds of the jurors, so too must the clothes of the nonobjecting accused. Nothing in logic or experience suggests that jurors, who need have no knowledge that an objection was lodged with the court, will react any differently in the two situations. It baffles me how the Court, having conceded that trial in identifiable prison garb denigrates the accused's presumption of innocence, can then make the constitutional determination turn on whether or not the accused informed the trial court that he objected; since an objection is irrelevant to the purpose underlying the prohibition of trial in prison garb, the Court's delineation of the due process right in this case—confining the due process safeguard to situations of state "compulsion"—is irrational on its face.[4]

---

[4] The Court states that "[t]he cases show . . . that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Ante*, at 508. Insofar as this suggests that the practice is prevalent, I am confident that there are simply no empirical data to support the statement. In any event, prevalence of the practice does not explain the limitation of the acknowledged infirmity to cases of *compelled* appearance in prison clothes.

In a single reported case, *Garcia v. Beto*, 452 F. 2d 655 (CA5 1971), a defense attorney testified that given the particular circumstances of the case, in which he sought to portray his client as a drunk, he thought that by emphasizing the difference between the accused and the jurors he would be aided in making that defense. The Fifth Circuit found that this deliberate trial strategy constituted a waiver of the right to be tried in civilian clothes. Although the other cases cited by the Court today noted the *Garcia* opinion, none involved such a trial tactic. See *Watt v. Page*, 452 F. 2d 1174, 1176 (CA10 1972) (noting that cases refer to the "possibility" that there may be a trial strategy and remanding for an evidentiary hear-

To be sure, an accused may knowingly, voluntarily, and intelligently consent to be tried in prison garb. *Johnson* v. *Zerbst,* 304 U. S. 458 (1938). But the Court, without any reason for departing from this standard, has simply subverted it by promulgating the novel and dangerous doctrine that a basic due process safeguard, affecting the fairness and accuracy of the factfinding procedure, is a contingent right that does not even come into existence until it is affirmatively asserted. Is the Court today thus signaling the demise of the *Johnson* v. *Zerbst* voluntary waiver test as the standard for determination of the surrender of constitutional protections? [5]

---

ing on the matter); *Anderson* v. *Watt,* 475 F. 2d 881, 882 (CA10 1973) (affirming grant of habeas relief since no trial strategy was shown); *Barber* v. *State,* 477 S. W. 2d 868, 870 (Tex. Crim. App. 1972) (asserting that the Fifth Circuit in *Garcia* noted that a defendant "often wants to be tried in jail clothing and that it is common for a defense counsel to prove before the jury how long the accused has been confined in jail"; however, no demonstration was made that such was true in Barber's case or in any case other than *Garcia,* and the *Garcia* case never suggested that the practice was "common"). The single instance in which a defense attorney, confronted with the fact his client was being tried in prison garb, attempted to employ that fact to invoke jury sympathy and thereby waived any right he otherwise had to trial in civilian garb, hardly supports the Court's conclusion that defendants "frequently" hope to benefit by this "tactic," *ante,* at 508, or the concurring opinion's similarly myopic statement that "counsel's failure to object in itself is susceptible of interpretation as a tactical choice," *ante,* at 514. See also n. 3, *supra.* In any event, even if there were situations in which trial in prison garb was deliberately employed as a defense tactic, that would only justify a decision that those individuals waived their rights. Cf., *e. g., Barker* v. *Wingo,* 407 U. S. 514, 525–529 (1972).

[5] Indeed, although acknowledging that trial in prison garb destroys the presumption of innocence, the Court proclaims that "[w]e are not confronted with an alleged relinquishment of a fundamental right of the sort at issue in *Johnson* v. *Zerbst,*" *ante,* at 508 n. 3. It is difficult to see where such assertions, which are flatly inconsistent with this Court's precedents, see n. 6, *infra,* will cease. For

522

For certainly if failure to object to trial in prison garb, even where the accused has not been shown to know that he might object, surrenders so basic a constitutional

example, since an accused has the right of self-representation in criminal trials, see *Faretta* v. *California,* 422 U. S. 806 (1975), will the Court now say that unless an indigent accused was *compelled* to forgo appointed counsel, he was simply exercising the right to represent himself, even if he was unaware of the right to court-appointed counsel? Cf, *e. g., Powell* v. *Alabama,* 287 U. S. 45 (1932); *Johnson* v. *Zerbst,* 304 U. S. 458 (1938); *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972). And has the Court signaled that unless the accused makes and the State rejects a motion for a speedy trial, there is automatically no constitutional violation? Cf., *e. g., Barker* v. *Wingo, supra,* at 523–530. Or perhaps the Court will hold that there is no constitutional violation if an accused does not object to jury instructions that would otherwise deny him his due process right to be convicted only if the State proves every element of the offense beyond a reasonable doubt, since there has not been any state "compulsion"? Cf., *e. g., Mullaney* v. *Wilbur,* 421 U. S. 684 (1975). See also, *e. g., Camp* v. *Arkansas,* 404 U. S. 69 (1971). Such possibilities are legion, for this Court has often recognized constitutional rights even though the accused did not explicitly demand them during his trial. Thus, whether the Court's decision is read as importing the privilege against self-incrimination's "compulsion" notion into areas in which it properly has no applicability, or as abrogating the traditional waiver standard for rights affecting the fairness and accuracy of the factfinding process, it is a marked and indefensible departure from constitutional principles which have long been settled. Moreover, such notions may have a pervasive impact on habeas corpus proceedings. Will the Court eventually employ these principles to overrule the "deliberate by-pass" test of *Fay* v. *Noia,* 372 U. S. 391 (1963), and the holding that an adequate state procedural ground that precludes review by appeal does not mean that an accused cannot "pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim," *Henry* v. *Mississippi,* 379 U. S. 443, 452 (1965)? The concurring opinion would put such a gloss on the opinion for the Court, and the opinion today in *Francis* v. *Henderson, post,* p. 536, confirms that my fears are not groundless.

right as that securing fairness and accuracy of the fact-finding process, the Court has totally eviscerated the traditional doctrine that loss of such rights cannot be presumed from inaction.[6]

## II

JUSTICES POWELL and STEWART concur in this evisceration of fundamental due process rights, but on the basis of a rationale essentially different from the rationale of the Court's opinion. In that circumstance their joining in the Court's opinion is puzzling. For although the opinion of the Court, admittedly obscure, may be interpreted either as importing the concept of "compulsion" into areas to which it is inapposite or as diluting the standard for waiver of fundamental constitutional rights, the concurring opinion would prefer to reverse the Court of Appeals on the ground that respondent—or more properly, respondent's attorney—committed "an inexcusable procedural default" or "tactical choice" that precludes his present assertion of this substantive right. *Ante*, at 513, 514. Because the concurring opinion obfuscates various issues, and because the import of this statement and the true rationale of the concurring opinion are brought into better focus by today's opinion for the Court in *Francis* v. *Henderson, post*, p. 536, which does properly present a question of procedural default, it

---

[6] Certainly a basic tenet of this Court's jurisprudence has consistently been that constitutional rights affecting the fairness and accuracy of the factfinding process are not lost unless the State demonstrates "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst, supra*, at 464; *Barker* v. *Wingo, supra*, at 525–529. See generally, *e. g., Schneckloth* v. *Bustamonte*, 412 U. S. 218, 235–246 (1973); *id.*, at 276 (BRENNAN, J., dissenting); *id.*, at 277 (MARSHALL, J., dissenting). By defining the due process right in prison-garb cases in terms of state compulsion, the Court opens the door for the complete abandonment of this waiver doctrine.

is essential to delineate two separate concepts relating to methods by which criminal defendants may yield or lose constitutional rights.

One concept is that of "waiver" which, at least with respect to constitutional rights affecting the fairness and accuracy of the factfinding process, means that the accused has engaged in conduct which may be characterized as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U. S., at 464; see n. 6, *supra.* If an accused has knowingly waived rights to which he was otherwise entitled, he has not, on the merits of his claim, been unconstitutionally deprived of anything. A separate concept is that of "procedural default," which involves the manner in which an accused may forfeit rights by not asserting them according to the strictures of a State's procedural rules. If the accused has committed a procedural default, there may never be an adjudication of the underlying constitutional claim on the merits. That problem was addressed in *Fay* v. *Noia,* 372 U. S. 391 (1963), which held that "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Id.,* at 438. However, *Fay* was emphatic that it was to be "very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus," *id.,* at 439, and unambiguously explained that the "deliberate by-pass" test for procedural defaults was the analogue of the "knowing and intelligent" waiver standard for loss of constitutional rights in the absence of a procedural rule concerning their assertion:

"The classic definition of waiver enunciated in *Johnson* v. *Zerbst,* 304 U. S. 458, 464—'an inten-

tional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. . . . At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." *Ibid.*

See also *Francis* v. *Henderson, post,* at 543–545, and n. 2 (BRENNAN, J., dissenting). When an accused has deliberately bypassed the State's mechanisms for adjudicating constitutional rights, a federal court generally need not address the merits of the underlying constitutional claim; as a corollary, when the state courts address the constitutional claim on the merits, the State may not seek to prohibit habeas relief on the ground that the accused was precluded from raising the claim due to a procedural default. See, *e. g., Lefkowitz* v. *Newsome,* 420 U. S. 283, 292 n. 9 (1975).

With this background in mind, two glaring inadequa-

cies in the concurring opinion become manifest. First, the issue of procedural default under state law is not presented by this case. The Texas Court of Criminal Appeals did not render its decision on state procedural grounds but on its view of federal waiver doctrine as expounded in another Court of Appeals for the Fifth Circuit opinion. See *Williams* v. *State,* 477 S. W. 2d 24, 26–27 (1972). The issue of procedural default was never raised by the State or addressed by any court below, and it is simply indefensible to seize this ground as a purported justification under which to perpetuate respondent's unconstitutional confinement. See also n. 10, *infra.*

Second, and even more basic, the concurring opinion, without reference to the holding of *Fay* and without citing any precedent, would reverse the Court of Appeals under a standard which directly repudiates *Fay* and which implicitly undermines its precedential value with respect to the assertion in habeas proceedings of all constitutional rights. The concurring opinion, which converts the "deliberate by-pass" test of *Fay* into an "inexcusable" default test, would find an "inexcusable" procedural default in the mere failure to object to an unconstitutional practice, reasoning that if there had been a timely objection the unconstitutional action would have been remedied. Such logic could, as a hindsight matter, probably be invoked any time counsel inadvertently or inexplicably fails to object contemporaneously to the deprivation of his client's fundamental rights, and the *Fay* knowing-and-intelligent-bypass test would thus be rendered a hollow shell. Indeed, the concurring opinion would also appear to shift the *Fay* burden of proof, in a case in which an unconstitutional deprivation of an accused's rights has been shown, by requiring the accused to show that the default was not "inexcusable" rather than requiring the State to show that the default was "deliberate."

Moreover, *Fay* required that the decision not to assert most constitutional rights be the informed choice of the accused himself rather than of his counsel. The concurring opinion would alter this aspect of *Fay* when "trial-type rights" are involved. The concurring opinion provides no principled content, however, to that term.[7] How is the right of a defendant to the presumption of innocence—as impinged when the State hales the accused, clad in prison garb, before a judge who is supposedly charged with ensuring the fairness of a trial—more a "trial-type" right than is the right to a jury trial, the requirement that the State prove every element of the crime by proof beyond a reasonable doubt, or the right to counsel itself? The concurring opinion would apparently undermine settled doctrines concerning waiver or loss of these rights without ever addressing the departure of its methodology from the unswerving path charted by the Court's precedents.[8] And if actions of

---

[7] The phrase "trial-type" rights might conceivably have some value with reference to potential constitutional challenges—for example, Confrontation Clause challenges to the introduction of hearsay evidence—which arise spontaneously during the course of the trial and concerning which there may be inadequate opportunity for counsel to consult with his client. The concurrence, however, invokes "trial-type" rights almost talismanically, with no indication of what the term connotes.

[8] All of these rights have been held by this Court to be violated unless the accused himself knowingly and intelligently waived them, and the burden of proof of demonstrating their waiver, which may not be presumed on a silent record, rests on the State. Surely the Court would not adulterate those standards in the context of procedural defaults. See *Francis* v. *Henderson, post,* at 553 n. 4 (BRENNAN, J., dissenting). Indeed, the knowing-and-deliberate-bypass test of *Fay* has been applied as the standard for measuring procedural defaults in such other situations affecting fundamental rights as the failure to take a timely appeal, the failure to challenge in a timely manner the introduction of unconstitutionally seized evidence, and the failure to object to a prosecutor's closing comments on a

counsel are to bind an accused in such "trial-type" situations, it would seem that the Court has an obligation to elucidate the standards by which counsel's actions are to be judged, particularly in a case such as this in which ineffective assistance of counsel is alleged. See nn. 13, 15, *infra*.

In any event, if the concurring opinion means that my Brothers STEWART and POWELL are forsaking the teaching of precedents such as *Fay*, I respectfully suggest that they have the clear responsibility not to do so by indirection, and to explicate at least the contours and outer limits of the novel and dangerous doctrines which they are formulating. See generally *Francis* v. *Henderson, post*, p. 542 (BRENNAN, J., dissenting). It is simply unacceptable that my Brethren, who concede that respondent was convicted in derogation of his constitutionally secured presumption of innocence, should nevertheless sanction his unconstitutional confinement on the basis of "procedural default" principles which are neither articulated nor justified in a case calling for such analysis, see *Francis* v. *Henderson,* and which are then conjured up as the ground for decision in a case in which those unarticulated principles are not even legitimately implicated. This hardly passes as reasoned adjudication, and is a grave disservice both to this Court and to the litigants who must come before it.

### III

Even under the Court's standard of *compelled* appearance, the judgment of the Court of Appeals should be affirmed. The Court's holding relies on the *per curiam* statement of the Court of Appeals for the Fifth Circuit

---

defendant's failure to testify at trial. See, *e. g., Fay; Kaufman* v. *United States,* 394 U. S. 217 (1969); *Camp* v. *Arkansas,* 404 U. S. 69 (1971).

on petition for rehearing in *Hernandez* v. *Beto*, 443 F. 2d 634, 637, cert. denied, 404 U. S. 897 (1971), that a defendant may not willingly proceed to trial in prison garb and later protest that fact. *Ante,* at 508–509.[9] Yet applying the standard of *Hernandez,* see 364 F. Supp. 335, 340 (1973), the District Court in this case expressly found that respondent had *not* willingly gone to trial in identifiable prison garb, and that finding was affirmed by the Court of Appeals. Significantly, the District Court stated, *id.,* at 343 (emphasis supplied):

> "It is clear from the record in this case and consistent with the evidence adduced in *Dennison,* the companion case, that prior to *Hernandez* there did exist a common practice in Harris County courts to try incarcerated defendants in jail clothing unless they were able to secure some dispensation. . . .
> "There is no doubt but that the [judge] had a prac-

---

[9] In *Hernandez,* no formal objection was made to the trial judge. 443 F. 2d, at 636. Although the Fifth Circuit on petition for rehearing stated that a "defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error," *id.,* at 637, it is clear that the court was addressing the question from a traditional waiver perspective. The court continued, *ibid.:* "In this case Hernandez' counsel did not object to the jail clothing because, from past experience, he thought that a motion for change of attire would have been a frivolous motion. We cannot accept this as a voluntary waiver by Hernandez." In the present case, the factual situation as found by the District Court is virtually identical to that found in *Hernandez.* The Court would distinguish *Hernandez,* however, on the ground that there was nothing in the record of that case to "suggest that the state trial judge had, as here, a longstanding practice, known to members of the bar, to permit any defendant to change into civilian clothes on request." *Ante,* at 509 n. 4. In addition to failing to take account of the suspect nature of the trial judge's affidavit, see n. 15, *infra,* this statement ignores the District Court's finding that there was *no* indication that this purported practice was publicly known or known to respondent or his counsel. See *infra,* at 530, 532–534, and n. 14.

tice of allowing defendants to stand trial in civilian clothing, if requested, a practice evidently followed by certain of the other judges as well. . . . However, the record does not reveal that [the judge's] practice was publicly known or that it was known to defendants or their counsel. More reasonably, *at times material to the [respondent's] criminal trial it was the standard practice to have all defendants in custody dressed alike* without any policy such as that employed by [the judge] being uniformly adopted by all or even a majority of the criminal district judges in Harris County. Instead, *the evidence points to the strong likelihood that the trial climate at that time acted as a natural deterrent to the raising of objections to what was commonplace*—a trial in jail clothes, even assuming that defendants or their counsel thought about the problem and considered its legal implications. In the absence of such consideration it can scarcely be concluded that either [respondent] or his trial counsel knowingly, willingly and voluntarily waived the right to be tried in civilian clothing."

Since the Court does not hold that that finding of the two courts is clearly erroneous, the finding is conclusive on us for the purpose of deciding the merits [10] and compels affirmance of the Court of Appeals.

---

[10] The "two-court" rule is the "long-established practice not to reverse findings of fact concurred in by two lower courts unless shown to be clearly erroneous. See, e. g., *Blau* v. *Lehman*, 368 U. S. 403, 408–409 (1962); *Faulkner* v. *Gibbs*, 338 U. S. 267, 268 (1949); *United States* v. *Dickinson*, 331 U. S. 745, 751 (1947); *United States* v. *Commercial Credit Co.*, 286 U. S. 63, 67 (1932); *United States* v. *Chemical Foundation*, 272 U. S. 1, 14 (1926); *Baker* v. *Schofield*, 243 U. S. 114, 118 (1917); *Towson* v. *Moore*, 173 U. S. 17, 24 (1899); cf. *Boulden* v. *Holman*, 394 U. S. 478,

Indeed, even if the Court is *sub silentio* re-evaluating the factual findings concurred in by the two courts, the re-evaluation is not supported by the record. The Court states that defense counsel had nothing to fear from an objection, *ante,* at 511, yet the District Court found that the prevalent trial climate deterred the making of such objections. Further, the Court omits mention of the significant finding of the District Court that the practice followed in respondent's case was customary in the jurisdiction. The Court also omits mention of the fact that there was uncontradicted evidence that respondent's counsel failed to object only because objection was perceived to be futile, and that counsel had no purpose to elicit jury sympathy or otherwise acquiesce in the practice for purposes of trial tactics.[11] More crucial, the Court states that defense counsel was "conscious" of the problem of trial in jail garb, since he mentioned the point at *voir dire,* and that the judge was thus "informed" of counsel's knowledge. *Ante,* at 510.

---

480–481 (1969)." *Neil* v. *Biggers,* 409 U. S. 188, 202 (1972) (BRENNAN, J., concurring in part and dissenting in part). The Court implies that only the Court of Appeals made such findings and that in doing so it failed to take account of relevant evidence before the District Court. *Ante,* at 510–511. The District Court, presented with all of the data cited by the Court, nevertheless concluded that the trial climate was such that objections to trial in prison garb were deterred; the number of cases involving this issue, particularly the substantial number emanating from Harris County courts, merely reinforced that finding.

Moreover, there is no reason in this case why the Court should reassess the finding of two courts that respondent did not willingly proceed to trial in prison garb. Petitioner did not challenge that holding in his petition for a writ of certiorari, and sought resolution *only* of the basic question whether trial in prison garb is so inherently prejudicial that it destroys the presumption of innocence.

[11] See, *e. g.,* App. 47–49, 58–59, 62–63; Tr. 5 (concession by petitioner here during habeas evidentiary hearing that trial tactics were not involved in this case).

This impliedly suggests that the trial judge is for that reason relieved of his obligation affirmatively to inquire whether respondent actually desired to be tried in such garb, for the trial judge might conclude that respondent was engaging in a deliberate trial tactic to elicit jury sympathy. The record is wholly devoid of any basis for that analysis.

The jury's attention to respondent's jail garb was first directed by the *prosecution* on *voir dire*.[12] Indeed, it was done so matter-of-factly as to highlight the prevalence of the practice in the Harris County courts. If the trial judge was truly sensitive to the problem and willing, as suggested, to sustain any objection that was raised to the practice, it is curious that the comments provoked no reaction from him. The Court suggests that it mattered not at all because the case against respondent was so strong that respondent had "no real case" and the testimony of eyewitnesses was "clear and

---

[12] The prosecutor, addressing his remarks to a specific member of the jury panel, stated:

"This defendant is sitting in jail clothes. I am assuming he's been in jail to the time of this trial. You are not to take this into consideration. The fact a man is in jail clothes shouldn't make you feel he is guilty any more than if he were in street clothes.

"The second thing, oftentimes evidence will come out that a person has been in jail for seven months or eight months awaiting trial. By the same token, this should not be taken into consideration on your verdict, because you are supposed to go straight down the line, guilty or not guilty, and not let how a person is dressed influence your decision." Exhibits, pp. 30–31.

Subsequently the prosecutor, again addressing a single juror, stated, *id.*, at 33:

"You have heard the questions I asked. I have gone over reasonable doubt, gone over the business of how the defendant was dressed, the fact he may or may not have been in the jail all this time."

If the jurors had ignored respondent's garb until then, these statements surely directed their attention to it.

consistent." *Ante*, at 510 n. 5. Even if true (and I do not share the Court's view of the strength of the trial evidence), that would not relieve the trial judge of his duty to inquire whether respondent was satisfied to proceed to trial in prison garb,[13] particularly since the judge had no knowledge at that time that respondent had "no real case." Indeed, the judge's uncommunicated good intentions and alleged sensitivity to prison garb are highly questionable in light of respondent's evidence that of the six cases involving nonbailed defendants tried in the same judge's courtroom during the two months surrounding respondent's case, every accused appeared in prison garb.[14] And the reasonableness of respondent's percep-

---

[13] "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Herron* v. *Southern Pacific Co.*, 283 U. S. 91, 95 (1931). "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." *Glasser* v. *United States*, 315 U. S. 60, 71 (1942). "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders* v. *United States, ante,* at 87. If the law relating to trial in prison garb was so clear, see *ante*, at 511–512, n. 8; concurring opinion, *ante*, at 514 n. 1, the devastating impact of such garb on the presumption of innocence so pervasive, and the trial judge's sensitivity so genuine, invocation of the "adversary system," see *ante*, at 512; concurring opinion, *ante*, at 515 n. 4, cannot justify the trial judge's failure to inquire into the matter, which certainly did not escape his attention. "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann* v. *Richardson*, 397 U. S. 759, 771 (1970). See *Francis* v. *Henderson, post,* at 553 n. 4 (BRENNAN, J., dissenting).

[14] See Williams' Exhibits 2–6. The cases involving nonbailed defendants constituted 50% of the jury cases before the trial judge during that period. See Williams' Exhibit 7. Respondent's trial counsel was aware that other defendants were appearing before the same trial judge in prison garb. App. 58–59.

tion that trial objection would be futile is accentuated by the fact that the deputy sheriff had already denied respondent's explicit request to wear at trial the clothes in which he was arrested.

At least, in light of the District Court's finding that there was no knowing and voluntary waiver and that trial objections were deterred by the then prevalent trial climate, I should think the Court would remand for further factual development concerning the practice in Harris County at the time of respondent's trial.[15] But

---

[15] A remand for further factual development is particularly appropriate if the Court believes that it has delineated the due process contours of trial in prison garb differently than did the District Court, since the District Court might not have anlayzed all factors relevant to state "compulsion." For example, respondent objected to introduction of the trial judge's affidavit on the ground that it was not taken pursuant to the Federal Rules of Civil Procedure and thus afforded respondent's counsel no opportunity to cross-examine the judge and inquire into such matters as the number of times objections had actually been made to the practice of trial in prison garb, especially before the *Hernandez* decision, which brought about the elimination of the practice in Harris County courts. The fact that the Court seems to have delineated the right differently than did the lower courts is highlighted by the fact that the petition asked "Whether a defendant's trial in jail clothing destroys the 'presumption of innocence' so as to deny him a fair trial," Pet. for Cert. 2, while the Court states the question presented to be "whether an accused who is *compelled* to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws," *ante,* at 502 (emphasis supplied). Moreover, it is particularly incongruous, if the Court is actually premising its holding, as the concurring opinion suggests, on a procedural default ground never presented or explored below, that the Court is reversing on the merits of the prison-garb issue rather than remanding for an inquiry as to whether the alleged procedural default forecloses an inquiry into the merits of respondent's claims. See *supra,* at 523–526.

The Court of Appeals did not address respondent's contention that respondent was denied effective assistance of counsel, in light

the record before us plainly calls for an affirmance of the Court of Appeals.

---

of its holding with respect to respondent's prison-garb contention. When the Court of Appeals now addresses the issue on remand, it should of course do so in light of the fact that the Court today declares that there were "ample grounds" for an objection to trial in prison garb, see *ante,* at 512 n. 8, concurring opinion, *ante,* at 514 n. 1, and the fact that trial counsel concededly had no tactical or other reason for desiring that respondent be tried in prison garb, see n. 11, *supra.*