James Haskel SMITH,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director Texas
Department of Corrections,
Respondent-Appellee.

No. 76–4185

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 11, 1977.

Bertrand C. Moser, Houston, Tex., for petitioner-appellant.

James H. Smith, pro se.

John L. Hill, Atty. Gen., John Pierce Griffin, Asst. Atty. Gen., Austin, Tex., David M. Kendall, 1st Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Chief, Enforcement Div., Austin, Tex., for respondent-appellee.

Before COLEMAN, GODBOLD, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellant in this case, James Haskel Smith, is presently serving a life sentence imposed by the state of Texas following Smith's jury trial and conviction under that state's habitual offender statute.[1] Since Smith's incarceration began in 1968, he has repeatedly invoked the jurisdiction of the Texas courts in an attempt to secure his release. In fact, the Texas courts have indicated that they will not entertain further pleadings from Smith unless he is able to raise issues which have not been and could not have been presented in his prior petitions. Thus stymied, Smith has turned to the federal courts in his efforts to secure his release.

---

* Rule 18, 5 Cir; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

1. Tex.Penal Code Ann. art. 63 (Vernon). Due to the 1974 recodification of the Texas penal statutes, the substance of the enhancement provision under which Smith was convicted and sentenced now appears at Texas Penal Code Ann. tit. 3, § 12.42(d) (Vernon).

Smith petitioned the court below for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1970). Initially, his *pro se* petition purported to state four grounds for habeas relief. The district court appointed counsel and granted Smith an evidentiary hearing on his claim. By the time of the hearing, these claims had been narrowed to two issues of constitutional significance: (1) whether he was forced, over his objections, to stand trial in prison clothing; and (2) whether certain plea negotiations collateral to his habitual-offender conviction resulted in the denial of his right to appeal that conviction. Each of these points was resolved against Smith in the proceedings below. On this appeal, he has (quite appropriately) abandoned the jail-clothes issue,[2] and relies solely on the alleged denial of his right to appeal his criminal conviction as his foundation for habeas relief. On that point we agree with the district court that no writ should issue, and accordingly affirm.

The pertinent facts are few. Smith's conviction under the Texas habitual offender statute, and the subsequent mandatory life sentence, came at a time when Smith was experiencing considerable difficulty with the Texas authorities. In addition to the indictment upon which he was tried and convicted, there were ten indictments outstanding against him. Nine of these involved violations of the Texas forgery laws; the tenth alleged another forgery offense and an accompanying violation of the same habitual offender statute under which Smith had been convicted and sentenced.

After Smith's conviction, his court-appointed attorney entered into plea negotiations with the state prosecutor in an attempt to dispose of the ten indictments outstanding. These negotiations resulted in Smith's entry of guilty pleas to four of the simple forgery indictments; the remaining six—including the habitual offender indictment—were dismissed upon the state's motion. On the four offenses to which Smith pleaded guilty, the state sentenced him to five-year terms to run concurrent with the life sentence imposed following his trial. As an additional term of the plea agreement, Smith dismissed his appeal of his conviction under the habitual offender statute.

Smith now takes issue with the results of these plea negotiations. More particularly, he contends that the state effectively denied him his right to appeal the conviction which produced the life sentence. In this connection, he makes two contentions: one factual, the other legal. The factual contention is that he did not voluntarily waive his state appeal, but was effectively forced into dismissing the appeal by the state's frustration—deliberate or otherwise—of his efforts to proceed on that appeal. The legal contention is premised upon the assumption that he clearly gained nothing in the plea negotiations from dismissing his appeal, since he was already sentenced to serve the maximum period of incarceration (i. e., life) which the state could impose upon the ten outstanding indictments anyway. From this premise, he argues that his plea agreement, and the concomitant dismissal of his state appeal, were necessarily defective on a theory akin to the "failure of consideration" doctrine of contract law.

■ Before we reach the merits of Smith's case, there is a threshold problem concerning Smith's failure to exhaust state remedies on the claim asserted before us. The record indicates that Smith has never presented any Texas court with the claim asserted before us today. We see nothing to be gained, however, by remanding this case with directions to dismiss for failure to exhaust—the Texas courts have clearly indicated that they will not entertain further petitions from Smith grounded upon issues which could have been raised in past actions. Thus, the absence of an available

**2.** Although the district court held its evidentiary hearing prior to the Supreme Court's decision in *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the court's ruling on the merits of Smith's claim was withheld until after *Williams* had come down. The district court concluded that Smith had not objected to standing trial in jail clothing, and this finding is not clearly erroneous. Accordingly, *Williams* vitiates any force which Smith's argument may have originally contained.

state remedy excuses the need for state exhaustion of this claim, see 28 U.S.C. § 2254(b) (1970), and it was quite proper for the court below to entertain Smith's case on the merits. For the same reasons, of course, it is appropriate that we do so.

Turning to the merits, then, we address first Smith's factual contention that his difficulties with pursuing his state appeal effectively coerced him into abandoning that appeal involuntarily. This version of the facts is apparently a novel one, since it was not presented to the district court with any degree of specificity at the evidentiary hearing below. The district court did inquire, however, into the voluntariness of Smith's abandonment of his state appeal by way of his plea agreement with the Texas authorities, and concluded that Smith had acted voluntarily. Our review of the record convinces us that this finding is not "clearly erroneous," see Fed.R.Civ.P. 52(a), and we accordingly affirm the district court's finding on this score.

■ Smith has one further contention. He argues that even if we refuse to overturn the district court's determination that his dismissal of his state appeal was voluntary, we should look further into the circumstances of his plea agreement with the state and conclude that his agreement to dismiss his appeal was defective because the state gave up nothing in the bargain.[3] Of course, the state nominally *did* forfeit its right to bring six indictments to trial, but Smith argues that as a practical matter this was no real forfeiture since the state had already succeeded in securing Smith's confinement for life anyway. Although this "failure of consideration" theory presents an interesting approach to the analysis of plea agreements, the circumstances of Smith's case simply do not raise the issue. Clearly, the state forewent its right to seek further enhancement of Smith's prison time by pursuing several (potentially consecutive) sentences against Smith. In fact, one of the indictments which the state dis-

missed as its part of the bargain carried a mandatory life sentence. The imposition of such a sentence could have had substantial effects on the likelihood of Smith's parole. On the other side, Smith (and his counsel) may have determined that his chances of success on his state appeal were remote; thus, Smith may have in fact received the better bargain in agreeing to dismiss the appeal. In short, even assuming that we may address plea agreements with an eye toward the full body of contract law, we would find ample consideration here to support Smith's plea agreement.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

---

**3.** To the extent that Smith relies upon the weakness of his bargain to support the factual contention that the agreement was involuntari-

ly made, that point is subsumed within the district court's findings of fact which we have already discussed.