_[xPLOTKIN, Judge.
On August 9, 1995, defendant Wardell Johnson was charged by bill of information with distribution of marijuana in violation of La.R.S. 40:966(A)(2). On August 11, 995, he pleaded not guilty. After trial before a twelve-member jury on January 24, 1996, he was convicted of attempted distribution of marijuana. After a multiple bill hearing on May 28, 1995, he was sentenced as a fourth felony offender to serve twenty years at hard labor. Johnson appeals.
At trial, Detective Clinton Lauman of the New Orleans Police Department testified that on June 24, 1995, he was working overtime with Sergeant Hessler and Officer Pit-man on Bourbon Street. The officers were in plain clothes. At 9:55 p.m. that night, they arrested Wardell Johnson. Hessler and Pitman were standing in the intersection of Bourbon and St. Ann near the Voodoo shop; Lauman was standing approximately twenty feet away. Detective Lauman saw Johnson approach Hessler and Pitman and engaged them in conversation after which all three began to walk down St. Ann toward Dau-phine. Detective Lauman followed and remained approximately twenty feet away. Johnson sat on the steps |2of a residence, retrieved a white napkin from his sock, and transferred it to Hessler, who opened it revealing what appeared to be enough loose marijuana to roll one joint. At that time, which was approximately 9:55 p.m., Sergeant Hessler arrested Johnson. Detective Lau-man identified the napkin, the marijuana, and Johnson in court.
Officer Bret Pitman corroborated Detective Lauman’s testimony. He testified further that when the officers were approached by Johnson he asked them whether they were looking for anything. After they responded affirmatively, Johnson said “I can get y’all some coke or weed.” When the officers declined to accompany Johnson on a search for cocaine, he indicated that he would give them marijuana if they left Bourbon Street and its police presence. Officer Pit- *235 man identified the napkin, marijuana, and Johnson in court. On cross examination, Officer Pitman denied approaching Johnson and initiating the conversation about drugs. Officer Pitman also conceded that the officers never discussed the price with Johnson but the transaction was understood to be a sale.
Sergeant Hessler corroborated Detective Lauman’s and Officer Pitman’s testimony. Sergeant Hessler was the officer in charge of the operation on Bourbon Street on June 24, 1995. Sergeant Hessler identified the napkin, the marijuana, and Johnson in court. On cross examination, Sergeant Hessler insisted that the officers were first approached by Johnson and that Johnson initiated the conversation about drugs.
It was stipulated that if Edgar Dunn were called as an expert in the analysis and identification of controlled dangerous substances he would testify that the substance taken from Johnson tested positive for marijuana.
Wardell Johnson testified that he was arrested on June 24, 1995, in the vicinity of Bourbon Street. He was walking between jobs when he saw theJjjofficers standing in the intersection of Bourbon and St. Ann. They called him over and initiated a conversation. Then they asked whether he knew where they could get cocaine to which he replied “No.” The conversation continued and they brought up the subject of marijuana. He asked whether they were police officers and they responded that they were not. Johnson volunteered to share a joint with them. When he removed a napkin, which contained marijuana, from his sock, one officer took it from him and he was placed under arrest. He admitted that he possessed a little marijuana for his own use but he denied selling drugs.
On cross examination, Johnson admitted that he was previously convicted for possession of cocaine. He denied involvement in that crime and explained that he was simply present when a drug transaction occurred and wrongfully arrested. He also admitted that in 1989 he pleaded guilty to possession of cocaine and was convicted for possession of a stolen vehicle and in 1980 he pleaded guilty to possession of stolen property.
A review of the record for errors patent reveals none.
In his first assignment of error, Johnson contends that the trial judge erred in permitting him to be tried in prison attire. Specifically, he asserts that he was denied the presumption of innocence. The record establishes that Johnson was tried in a bluish-green sweatshirt marked OPP.
Compelling a criminal defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. State v. Spell-man, 562 So.2d 455, 456 (La.1990); see also Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). A reasonable delay is appropriate to accommodate a defendant’s right to be tried in his own clothes and, moreover, works no hardship on the State. Id. When the defense objects before the jury is impaneled and the objection is not simply a pdilatory tactic, then the State is not prejudiced by allowing a defendant the extra time to change to civilian clothing. State v. Leggett, 363 So.2d 434, 438 (La.1978). The failure of a defendant to make a timely objection is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. State v. Brown, 585 So.2d 1211, 1213 (La.1991) (quoting Estelle, supra at 513, 96 S.Ct. at 1697).
In State v. Martin, this Court found a defendant’s objection to trial in prison attire to be untimely and dilatory. State v. Martin, 624 So.2d 448, 450 (La.App. 4th Cir.1993), writ granted in part, 94-1526 (La.9/20/96), 679 So.2d 414 (remanded to determine if defense counsel was ineffective). In Martin, the defendant did not object to the prison clothes until after the jury was impanelled and trial had started. This Court noted that the transcript showed that the defendant’s objection was made after the State’s opening statement, defense counsel’s waiver of argument, and the first witness was called. The trial judge in Martin refused to delay the trial but instructed the jurors that the defendant’s attire had nothing to do with his innocence or guilt. See id.
*236 In the instant ease, after voir dire was completed and the venire panel was dismissed, the defendant addressed the trial judge as follows: “Excuse me, your honor. I’m entitled to my civilian clothes as I’m going to trial to prove my innocence.” The trial judge responded only “Sit down” and called for the opening statements. Although the trial judge instructed the jury about the presumption of innocence in general terms after closing statements were made, he did not instruct the jury specifically at the time of the objection, as in Martin, or make any further inquiry to determine whether the defendant’s tactics were simply dilatory, such as inquiring of the defendant whether he had arranged for his civilian clothing to be brought to court.
15It is certainly possible that a defendant’s request to be tried in his civilian clothes made at the close of voir dire may not be considered timely and may be interposed for the purpose of delay. See Leggett, supra at 438, and cases cited therein. However, we find under the circumstances of this case that the trial judge’s response to the defendant’s request was neither adequate nor comparable to the steps taken by the trial judge in Martin. In the instant case, the defendant was convicted of a lesser included crime on the basis of credibility contest with the arresting officers regarding whether the disputed events amounted to a sale. We cannot find the risk of impermissible considerations coming into play in the jury’s determinations to be an acceptable one under these circumstances.
The State contends that the prison attire in this case was not so distinctive or readily identifiable as such as to infringe upon the defendant’s presumption of innocence, However, the record establishes that the defendant was tried in an Orleans Parish Prison sweatshirt which was plainly marked as such. The jurisprudence has consistently found significant the presence or absence of prison identifiers and markings in determining whether prison attire is readily identifiable as such. See, e.g., State v. Hullaby, 26,227, p. 3 (La.App.2d Cir. 8/19/94), 641 So.2d 1094, 1096; State v. Cleveland, 25, 628, p. 6 (La.App.2d Cir. 1/19/94), 630 So.2d 1365, 1369. The State’s contention is without merit.
Because we reverse the defendant’s conviction for the impermissible infringement upon his presumption of innocence, we do not address his remaining assignment of error. For the foregoing reasons, Johnson’s conviction is reversed and the case remanded for newr trial.

REVERSED.

LOBRANO, J., dissents.