IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2004 Session

**JAMES GORDON FREEMAN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-B-788    Seth Norman, Judge**

**No. M2003-00899-CCA-R3-PC - Filed April 2, 2004**

Petitioner, James Gordon Freeman, filed a pro se petition for post-conviction relief, which was amended by appointed counsel. Following an evidentiary hearing, the trial court dismissed the petition. On appeal, Petitioner argues that the post-conviction court erred in finding that Petitioner received effective assistance of counsel at trial. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Kathleen G. Morris, Nashville, Tennessee, for the appellant, James Gordon Freeman.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of one count of theft over $1,000.00 and one count of especially aggravated kidnapping. Petitioner was sentenced as a Range II multiple offender to four years for the theft conviction and thirty-four years for the especially aggravated kidnapping conviction. The trial court ordered the sentences to run consecutively for an effective sentence of thirty-eight years. The facts surrounding Petitioner's convictions were summarized by this Court in Petitioner's direct appeal in *State v. James Gordan Freeman*, No. M1998-00182-CCA-R3-CD, 1999 1L 1073694 (Tenn. Crim. App., Nashville, Nov. 29, 1999), *perm. to appeal denied* (Tenn. May 15, 2000) as follows:

On New Year's Eve 1996 defendant James Freeman wrapped-up three days of crack cocaine use by consuming over a fifth of Cognac at a New Year's party. Early in the morning of January 1, 1997, he went to the Par Mart convenience store at the intersection of 10th Street and Shelby Street, in East Nashville, and badgered the clerk, George Blackwell, for free beer and cigarettes. Blackwell, who knew Defendant because he was a friend of Defendant's wife, refused to give Defendant any free goods. Defendant continued to harass Blackwell, and Blackwell threatened to call the police if Defendant did not leave. Defendant continued to hang around the store, and the store's surveillance tape shows Defendant walking in and out of the main door repeatedly, talking to customers and Blackwell. Eventually, Blackwell called the police and asked to have Defendant removed.

In the meantime, Tina Trevino, an East Nashville resident, stopped at the Par Mart store just before 3:00 AM that morning. She had celebrated the New Year's holiday at her parents' home, and she was returning to her own home with her son, Horatio Lee Trevino. She pulled her Ford Probe in to the Par Mart to get some snacks for herself and Lee, and parked her car a few feet from the store's entry, immediately adjacent to the curb abutting the front of the store. Ms. Trevino left her car running, so as to keep the heat on for Lee, and locked her door. Lee remained in the car, in the front seat. When Trevino was in the store, Defendant walked around her car several times. When Trevino was at the cash register, ready to pay, Defendant got in her car and drove away. When he did so, Lee Trevino was still in the car.

Blackwell called 911 and informed the police of the theft, and the fact that Lee was in the car. Unbeknownst to Blackwell and Trevino, Defendant let Lee out of the car approximately three blocks away, near 13th Street and Shelby Street. Defendant then ran the car into an obstacle, and drove away. Lee was noticed by a local resident, who took Lee inside his home and called police. Lee was then returned by patrol car to his mother some time between 3:15 and 3:30 AM. Shortly thereafter, Defendant crashed the car on another street in East Nashville. He set the back seat of the car on fire to hide his fingerprints, took several video games from the back seat of the car, and abandoned the vehicle. He was arrested later that morning at his wife's residence on 13th Street South. Defendant was indicted on April 15, 1997, on one count of theft, more than $1,000, *see* Tenn. Code Ann. §§ 39-14-103, 105, and one count of especially aggravated kidnapping, *see id.* § 39-13-305. After a jury convicted him of both counts, the trial court sentenced Defendant on July 15, 1998. Defendant was sentenced to four (4) years for the theft, and thirty-four (34) years for the aggravated kidnapping, with the sentences to run consecutively.

. . . .

The only proof that the defense offered at trial was Defendant's testimony. Defendant conceded that he stole Tina Trevino's vehicle. However, Defendant denied knowing

that Lee Trevino was in the car when Defendant entered the car and drove away from the Par Mart convenience store. Defendant claimed that he did not know that Lee was in the car until he had exited the Par Mart parking lot.

*Id.* 1999 WL 1073694, at *1-2.

On appeal, Petitioner argued (1) that the evidence was insufficient to support his conviction for especially aggravated kidnapping; (2) that the trial court erred in not granting Petitioner's motion for judgment of acquittal under *State v. Anthony*; that (3) that the child victim should not have been allowed to testify; (4) that the jury should have been instructed as to the range of punishment for the offenses; and (5) that the trial court erred in determining the length and manner of service of Petitioner's sentence. *Id.*, 1999 WL 1073694, at *2. Following a review of the record, this Court affirmed Petitioner's convictions and sentences. *Id.*, 1999 WL 1073694, at *9.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner asserted that Larry Hoover, Petitioner's trial counsel, provided ineffective assistance (1) when he solicited Petitioner's admission on direct examination that he had been in custody since his arrest; (2) when he failed to effectively impeach Ms. Trevino's credibility during cross-examination and failed to interview the State's witnesses prior to trial; and (3) when he failed to physically inspect Ms. Trevino's car prior to the trial.

Mr. Hoover testified that his decision to ask Petitioner about his custodial status at the time of trial was a tactical strategy designed primarily to deflect the jury's potential anger over the fact that Petitioner had let the five-year-old victim out of the stolen car on a deserted street late at night. Mr. Hoover said that he wanted to show the jury that even if they found Petitioner not guilty of the charge of especially aggravated kidnapping, Petitioner had already been punished for his treatment of the child.

Petitioner contended that Mr. Hoover should have questioned Ms. Trevino during cross-examination about the inconsistencies between her testimony at the preliminary hearing and her testimony at trial. At the preliminary hearing, Ms. Trevino said that she left her son in the front seat of the car, that she saw Petitioner entice her son to unlock the car, and that she grabbed the tail of Petitioner's jacket before he entered her car. Mr. Hoover agreed that there were many inconsistencies between Ms. Trevino's testimony at the preliminary hearing and her testimony at trial, but her testimony at trial was generally more favorable. Mr. Hoover said that he relied on the surveillance tapes to support Petitioner's defense. Mr. Hoover believed that the tapes sufficiently reflected Petitioner's obvious intoxication and the fact that he did not know anyone was in the car. On cross-examination, Mr. Hoover agreed that bringing Ms. Trevino's previously unfavorable statements to the jury's attention would not have been beneficial to Petitioner's defense.

Mr. Hoover confirmed that he did not talk to the detective and police officers assigned to the case prior to trial. He pointed out, however, that he inspected the crime scene and interviewed both

Ms. Trevino and her son during his trial preparation. On cross-examination, Mr. Hoover reiterated that Petitioner's defense rested solely upon his own testimony and the surveillance tapes from the store.

At the post-conviction hearing Petitioner maintained that the windows of Ms. Trevino's car were tinted black so that he was not able to see whether or not Lee Trevino was in the car. Mr. Hoover said that he did not inspect Ms. Trevino's car prior to trial. He stated, however, that he only learned about the tinted windows shortly before the verdict during a casual conversation with Petitioner's wife.

Ms. Trevino testified at the post-conviction hearing that her car windows were not tinted black, and only the back window had a slight tint around the edges. Ms. Trevino confirmed that she talked with Mr. Hoover prior to trial.

Petitioner said that he met with Mr. Hoover several times prior to trial. Petitioner maintained that he told Mr. Hoover about the tinted windows, but Mr. Hoover told him that he did not think this factor would be helpful to Petitioner's defense. On cross-examination, Petitioner conceded that he mentioned the tinted car windows at some point in his trial testimony but stated that this fact should have been stressed more during the trial. Petitioner denied that the car's windows were darkened after the incident by smoke when he set fire to the car.

Based on the evidence presented at the hearing, the post-conviction court found that Petitioner had failed to establish that his counsel rendered ineffective assistance at trial. The post-conviction court found that Mr. Hoover's decision to tell the jury about Petitioner's custodial status was a matter of trial strategy developed in response to the circumstances as they existed at the time of trial. The post-conviction court also found that Mr. Hoover's decision not to bring Ms. Trevino's prior inconsistent statements to the jury's attention was a sound tactical strategy because such statements directly contradicted Petitioner's defense that he did not know the child was in the car. The post-conviction court accredited Ms. Trevino's testimony that her car's windows were not tinted thereby implicitly finding that Mr. Hoover was not deficient for failing to physically inspect the car prior to trial. Accordingly, the post-conviction court denied Petitioner's petition for post-conviction relief.

## III. Analysis

Petitioner raises two issues on appeal. First, he alleges that his trial counsel's performance was deficient when he questioned Petitioner about his incarceration on direct examination. Secondly, Petitioner argues that his trial counsel's assistance was ineffective when he failed to request a jury instruction on the lesser-included offenses of especially aggravated kidnapping and when he failed to preserve the issue for appeal.

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). However, the trial court's

application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## A. Improper Questioning

Petitioner argues that counsel's solicitation of his admission on direct examination that he was in custody at the time of the trial deprived Petitioner of his right to a fair and impartial trial. Petitioner submits that this exchange was no less prejudicial than clothing Petitioner in prison dress before the jury. *See Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). Moreover, Petitioner contends that while such questioning may have been prompted by counsel's trial strategy, the strategy was fatally flawed.

Every defendant is entitled to a fair and impartial trial. *Willocks v. State*, 546 S.W.2d 819, 820 (Tenn. Crim. App. 1976). The guilt or innocence of a defendant should be decided upon the evidence introduced at trial and not because the defendant, for example, is in custody. *Taylor v. Kentucky*, 436 U.S. 478, 485, 99 S. Ct. 1930, 1934, 56 L. Ed. 2d 468 (1978). Certain practices during a trial may "pose such a threat to the fairness of the fact finding process that they must be subjected to 'close judicial scrutiny.'" *State v. Braden*, 874 S.W.2d 624, 626 (Tenn. Crim. App. 1994), citing *Estelle*, 425 S.W.2d at 504, 96 S. Ct. at 1692-93. A defendant, for example, should not be compelled by the State to stand trial dressed in prison clothing. *Estelle*, 425 U.S. at 504, 96 S.

Ct. at 1693. As the *Estelle* court noted, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Id.*, at 504-05.

That is not to say, however, that a defendant may not choose for tactical purposes to place his custodial status before the jury. *See Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S. Ct. 1340, 1345, 89 L. Ed. 2d 525 (1986). A defendant, for example, may hope to appeal to the jury's sympathy through his prison attire. *Id.*, at 508, (citing *Andern v. Watt*, 475 F.2d 881, 882 (10th Cir. 1973); *Watt v. Page*, 452 F.2d 1174, 1176 (10th Cir. 1972)). "[J]urors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance." *Holbrook*, 475 U.S. at 567, 106 S. Ct. at 1345; *Carroll v. State*, 532 S.W.2d 934, 937 (Tenn. Crim. App. 1975).

The post-conviction court found that counsel's decision to reveal that Petitioner was in custody was prompted by trial strategy, and the record does not preponderate against this finding. *See Hellard*, 629 S.W.2d at 9, citing *United States ex rel. Burton v. Cuyler*, 439 F. Supp. 1173, 1187 (E.D. Pa. 1977). Petitioner is not entitled to relief on this issue.

B. Lesser Included Offenses

We note at the outset that Petitioner's challenge to the trial court's jury instructions is plagued by procedural defects. Nonetheless, Petitioner urges this Court to consider his argument that Mr. Hoover provided ineffective assistance in not pursuing a jury instruction on lesser included offenses either at trial or on appeal.

Petitioner's issue concerning lesser included offenses was raised for the first time in a *pro se* amendment to his petition for post-conviction relief that was filed after the appointment of counsel but apparently without counsel's assistance. The factual allegations supporting the claim for relief were attached to the amendment as a "memorandum of facts and law." Although Petitioner verified the amendment under oath, it is not clear whether the verification extended to the memorandum which was unverified. *See* Tenn. Code Ann. § 40-30-104(e); *Hutcherson v. State*, 75 S.W.3d 929, 931 (Tenn. Crim. App. 2001). Amendments to a petition for post-conviction relief must substantially conform to the requirements imposed on the filing of the original petition. Tenn. Code Ann. § 40-30-104(g).

The subject of lesser included offenses was only mentioned briefly during the post-conviction hearing in the following exchange:

COUNSEL: Okay. Mr. Hoover, did you ever request any lesser included offense be charged to the jury?

MR. HOOVER: I don't recall one way or the other on those.

COUNSEL: That's all the questions I have, your Honor.

Mr. Hoover was not questioned about his decision not to appeal the trial court's jury instructions, and Petitioner did not offer any other proof at the post-conviction hearing to establish any deficiencies in Mr. Hoover's representation of Petitioner on appeal or at trial in regard to this issue.

Petitioner effectively abandoned this issue when he failed to present any proof at the post-conviction hearing in support of his claim other than Mr. Hoover's very equivocal testimony on the subject. In any event, Petitioner has not shown by clear and convincing evidence that his counsel rendered ineffective assistance for failing to object to the trial court's jury instructions or by failing to appeal those instructions. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a review of the record, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE