IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2006

## STATE OF TENNESSEE v. THOMAS CARTER

**Direct Appeal from the Criminal Court for Loudon County**
**No. 10212     E. Eugene Eblen, Judge**

**No. E2005-00731-CCA-R3-CD - Filed September 22, 2006**

Defendant, Thomas Carter, was convicted of coercion of a witness, a Class D felony, and sentenced to serve four (4) years in the Department of Correction. On appeal, Defendant argues that (1) the State did not introduce sufficient evidence to convict him of the charge of coercion of a witness; and (2) the trial court violated his constitutional rights by requiring him to wear shackles and his prison uniform during his trial. Finding the second issue to have merit, we reverse the judgment and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ. joined.

Patrick T. Phillips, Knoxville, Tennessee, (on appeal); Kent Booher, Lenoir City, Tennessee, (at trial), for the appellant, Thomas Carter.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Scott McCluen, District Attorney General; and D. Roger Delp, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Background

Officer James Cecil Webb of the Loudon Police Department testified that he was present in Loudon County General Sessions Court on May 10, 2000, as a witness in a case against Defendant. Other witnesses present in court that day were Michelle Brewster, Officer Jonathan Sartin, and Officer Robert Scott Newman.

According to Officer Webb, he and Officers Sartin and Newman were standing together in the Loudon County General Sessions Court waiting for Defendant's case to be called. Ms. Brewster was sitting on a courtroom bench behind and to the left of where the officers were standing. While they were standing there, the door to the holding cell was opened by the attending officer. Defendant stood in the doorway of the holding cell, pointed his finger at Ms. Brewster and said "she could make all of this go away. She had better change her story." Defendant "had a mean look, a real serious look on his face . . . and he wanted her to know that he meant business." Officer Webb said that everyone in the courtroom, including the judge, witnessed Defendant's threat to Ms. Brewster.

Officer Jonathan Sartin of the Lenoir City Police Department also testified that he was in the Loudon County General Sessions Court on May 10, 2000. He saw Defendant stand in the doorway of the holding cell, point his finger at Ms. Brewster and say, "you could put a stop to this if you'd change your story." According to Officer Sartin, Defendant's demeanor and his tone of voice were threatening. He looked at Ms. Brewster with an expression that said she would be in "trouble" if she did not change her story.

On cross-examination, Officer Sartin said that he was approximately fifteen feet from Defendant when he threatened Ms. Brewster. He said that following Defendant's threat, Ms. Brewster looked "scared" and exited the courtroom.

Officer Robert Scott Newman of the Loudon Police Department testified that he was present in the Loudon County General Sessions Court on May 10, 2000. He said that while he stood waiting in the courtroom with some other officers, Defendant appeared in the doorway of the holding cell, pointed his finger at Ms. Brewster, and said in a loud, intimidating voice, "you can stop this. You better change your story."

On cross-examination, Mr. Newman said that he knew that Defendant and Ms. Brewster "had been fussing and feuding with each other," and it was obvious that Defendant was upset with Ms. Brewster.

Michelle Brewster testified that she was in Loudon County General Sessions Court on May 10, 2000. She and her brother, Wayne Cable, sat together in the courtroom. Defendant's mother and father sat next to her brother. Ms. Brewster said that there was a "big altercation" between her and Defendant's parents. She said that they were "real ugly" and "mean" and "it was a tough and hard situation." Some of the officers who were present escorted Defendant's parents out of the courtroom.

Ms. Brewster said that as she was sitting in the courtroom talking with her brother, Defendant came to the holding cell door and said "tell the truth," "I love you," and "I'll see you later." She said she was in court to testify against Defendant because her car had been wrecked. Ms. Brewster said that "after [she] thought about it," the story that she originally told police was different than what actually happened. She said that she was "planning to tell that day in court what [she] thought had happened, until everything got blowed up."

Ms. Brewster said that when Defendant spoke to her in the courtroom, she did not have any indication that he wanted her to lie during her testimony, and she was not afraid of Defendant. She said that she would not have lied in her testimony. She said that she left the courtroom after Defendant's statements because his attorney wanted to speak to her outside. Ms. Brewster "was in no fear whatsoever" because Defendant was incarcerated. She said that she signed the warrant for coercion of a witness because she thought the warrant was for the arrest of Defendant's parents, not Defendant.

On cross-examination, Ms. Brewster admitted that she had previously told the officers at the justice center that she was scared to death of Defendant. She also said she was concerned about what he would do to her when he got out of jail and whether he would be mad at her. Ms. Brewster denied that Defendant had kidnapped her in the past, but acknowledged that he had intimidated her on previous occasions. She admitted that she and Defendant were now on "civil terms" and that she had hugged him and kissed him that day.

Ms. Brewster further admitted that she signed an affidavit, under oath, which indicated that she was a prosecuting witness in a pending case in which Defendant was charged with vehicular assault, reckless endangerment, and other theft and assault charges. The affidavit further indicated that while Defendant was in the holding room awaiting his court appearance on these charges, the door to the holding cell was opened and he stuck his arm out of the door, pointed his finger at Ms. Brewster, and said "you better change your story." The affidavit also stated that Ms. Brewster expressed "extreme fear of defendant due to his past actions, kidnapping toward her," and that she felt intimidated, threatened, and that Defendant was a danger to her.

On the day of his trial for the charge of coercion of a witness, Defendant was transported to the courthouse wearing his Tennessee Department of Correction uniform. The uniform consisted of blue denim trousers and a blue chambray shirt. He was also restrained by handcuffs which were attached to a waist belt around his waist. During a hearing in the trial judge's chambers, Defendant's trial counsel made an oral motion that Defendant be permitted to wear civilian attire during his trial and that he also be released from the handcuffs which were attached to his waist belt. A guard from the Department of Correction was attending Defendant, and he voiced an objection to removing Defendant's restraints. This objection was brought to the trial judge's attention, and he subsequently ruled that Defendant had to remain in both his prison uniform and his physical restraints during the trial.

There was no court reporter present during this hearing in the trial judge's chambers. The available evidence is taken from a supplement to the appellate record filed. The supplemental record, which was filed September 16, 2005, contained a statement of the evidence approved and signed by the trial judge. The statement of the evidence was properly included in the appellate record. Tenn. R. App. P. 24(e).

## II. Timeliness of Notice of Appeal

Initially, the State argues that this Court should dismiss Defendant's appeal because his notice of appeal was untimely filed and the Petitioner "has not demonstrated that the timeliness requirement should be waived in the interest of justice." A notice of appeal is required to be filed with the clerk of the trial court within thirty days after the date of entry of the judgment or order from which relief is sought. *See* Tenn. R. App. P. 4(a). A timely filing of a motion for new trial tolls this period until entry of the order denying or granting the motions. *See* Tenn. R. App. P. 4(c). However, in the present case, Defendant's notice of appeal was filed more than thirty days after the trial court orally denied the motion for new trial on the record at the conclusion of the hearing on February 11, 2005. Defendant filed his notice of appeal on March 30, 2005. As discussed in the next issue, there is some question as to when a valid order denying the motion for new trial was entered, whether by a minute entry or only by an order entered July 13, 2006 *nunc pro tunc* for February 11, 2005. In any event, Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that the notice of appeal document is not jurisdictional and that timely filing may therefore be waived in the interest of justice. In the interest of justice, we have determined to exercise our discretion and waive the timely filing of the notice of appeal, if in fact it was untimely filed, in order to consider Defendant's appeal on its merits.

## III. Prison Garb and Shackles Worn by Defendant During Trial

Defendant argues that the trial court violated his constitutional rights by requiring him to wear his prison uniform and physical restraints during the trial. This Court has recognized that "it is a violation of due process for a state to compel a defendant to stand trial before a jury in prison clothes." *State v. Zonge*, 973 S.W.2d 250, 256 (Tenn. Crim. App. 1997) (citing *Estelle v. Williams,* 425 U.S. 501, 512, 96 S. Ct. 1691, 1697, 48 L. Ed. 2d 126 (1976)). In *Zonge*, a panel of this Court explained that "prison clothing worn at trial is a constant reminder of the defendant's condition and presents an unacceptable risk of influencing a juror's judgment." *Zonge*, 973 S.W.2d at 256 (citing *Estelle*, 425 U.S. at 504-05, 96 S. Ct. at 1693). This Court further noted that there is no justification or state interest which would be served by the practice of forcing a defendant to stand trial in his prison garb. *Id.* at 256 (citing *Estelle*, 425 U.S. at 504-05, 96 S. Ct. at 1693). In so doing, we recognized that there may be tactical reasons why a defendant would choose to be tried in a prison uniform. *Id.* at 257 (citing *Estelle*, 425 U.S. at 504-05, 96 S. Ct. at 1693). Accordingly, this Court noted that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in . . . prison clothes, the failure to make an objection . . . to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Zonge*, at 257 (quoting *Estelle*, 425 U.S. at 512-13, 96 S. Ct. at 1697).

Although there is a legal presumption against the necessity of in-court restraints on a defendant, in some instances, a defendant may be restrained during his or her trial. The burden is on the State "to show the necessity of any extreme physical measures." *Willocks v. State*, 546 S.W.2d 819, 821 (Tenn. Crim. App. 1976). It is within the discretion of the trial judge to determine

whether a defendant should be shackled during trial. *Id*. at 822. Because shackling is considered inherently prejudicial to a defendant, there must be a clear showing of necessity in the record for this Court to find that the trial court has not abused its discretion. *Id*. In order for this Court to conduct a meaningful review of the trial judge's actions, the trial court (1) should conduct a hearing, (2) must state upon the record its reasons for ordering physical restraints, and (3) must give adequate jury instructions that the restraint of the defendant should in no way affect the jurors' decision. *Id*. Where shackles are used to restrain a defendant before a jury, the shackles must be the least drastic security measure that will reasonably suffice. *Id*. "[A] defendant should not be required to wear prison clothing or be in handcuffs during trial in a courtroom, except insofar as the trial court, in its sound discretion may find it necessary to prevent escapes, violence or misconduct which would impede the trial." *State v. Baker*, 751 S.W.2d 154,164 (Tenn. Crim. App. 1987).

In the present case, there was nothing contained in the transcript of the trial proceedings regarding Defendant having to be physically restrained and having to wear his prison garb during the trial. However, as noted above, a supplemental record consisting of a statement of the evidence, signed by the trial judge, which indicated that Defendant made an oral motion concerning this issue during a hearing in the trial judge's chambers, was filed and made a part of the record. The statement of the evidence reflects that Defendant's counsel requested that the trial court allow Defendant to wear civilian clothes and have his physical restraints removed at trial. A guard from the Department of Correction who was attending to Defendant voiced an objection to removing Defendant's restraints. This objection was brought to the trial judge's attention. The trial judge overruled Defendant's motion and determined that Defendant would remain in restraints and prison garb during the trial. The statement of the evidence contains no offer of proof from the State and no formal findings from the trial court indicating why it was necessary for Defendant to remain in his prison uniform and also restrained during the trial.

The Rules of Appellate Procedure provide that where "no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available," an appellant should prepare a statement of the evidence or proceedings using the best information available, including the appellant's own recollections. Tenn. R. App. P. 24(c). The statement compiled by the appellant "should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c). The appellee, in this case the State, has fifteen days from the date the statement is filed within which to file any objections to the statement with the clerk of the trial court. Tenn. R. App. P. 24(c). "Any differences regarding whether the [statement of the evidence] accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court." Tenn. R. App. P. 24(e). Where a statement of the evidence is properly submitted in lieu of a transcript, this Court may review the statement of the evidence as part of the record on appeal. *See State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990).

We note that this Court has repeatedly discouraged "off-the-record" discussions concerning matters of significance in criminal proceedings because such discussions may preclude appropriate appellate review. *See* T.C.A. § 40-14-307(a) (requiring court reporter to "attend every stage of each

criminal case"); *see also State v. Barnes*, No. M2001-00631-CCA-R3-CD, 2002 WL 1358717, at
*6 (Tenn. Crim App., at Nashville, June 24, 2002), *perm. app. denied* (Tenn. Dec. 2, 2002)
(discouraging "off-the-record" discussions"); *State v. Hammons*, 737 S.W.2d 549, 551 (Tenn.
Crim. App. 1987) (condemning "off-the-record bench conferences"); *State v. James Hall Schlegel*,
No. W2000-02597-CCA-R3-CD, 2002 WL 1558640, at *5 (Tenn. Crim. App., at Jackson, Jan. 28,
2002) (no Tenn. R. App. P. 11 application filed) (condemning in-chambers charge conferences);
*State v. Blaine M. Wright*, C.C.A. No. 03C01-9401-CR-00388, 1995 WL 728535, at *9-10 (Tenn.
Crim. App., at Knoxville, Dec. 11, 1995), *perm. to app. denied* (Tenn. June 3,1996) (noting the
requirement to preserve for the record all bench conferences). Further, trial counsel should refrain
from such "off-the-record" discussions unless ordered by the trial court to participate. *State v.
Hammons*, 737 S.W.2d at 551.

While the hearing in the trial judge's chambers was not in the presence of the court reporter,
the hearing on the motion for new trial was properly included in the record. Pertinent to this issue
is the following excerpt from the motion for new trial hearing:

| | |
|---|---|
| THE COURT: | Overrule your motion. [Defendant's] hands were not shackled within the trial. And I don't even recall if he was in prison garb or in street clothes at the time of his trial. We might inquire of [his trial counsel] Mr. Booher. |
| MR. HILL: | Mr. Booher, he was not in - - what was he in? |
| MR. BOOHER: | Your honor, I can tell you, he was in the TDO[C] outfit, the blue chambray shirt and the blue jeans. And if I can remind the Court, I did ask if he could change into his clothes that day. And the guards that were with him strongly objected to that. So we went to trial with him in his TDO[C] shirt and jeans. |
| THE COURT: | But his hands were not shackled during the trial. |
| MR. BOOHER: | Yes, Your Honor, they were. They had him in closed shackled. |
| THE COURT: | His feet were, but I don't recall his hands. |
| MR. BOOHER: | He had the leg chains on. And I'll be truthful, I don't think that was a problem. And certainly he didn't have any need to use his hands during the trial, but they were shackled. |
| THE COURT: | All right. |

MR. HILL:           And I assume his hands were on that table, too, where the jurors could look at him.

THE COURT:          Or maybe under. But I didn't recall his hands being shackled. Anyway, I overrule your motion for new trial.

MR. HILL:           Very well, Your Honor.

- - END OF REQUESTED PROCEEDINGS - -

Upon reviewing the record, it was discovered that the appellate record did not contain an order denying Defendant's motion for new trial. An appellate court clerk made an inquiry to the trial court clerk regarding the existence of such an order, and was informed that there was a minute entry reflecting that Defendant's motion for new trial had been denied. On July 6, 2006, this Court entered an order for the trial court clerk to supplement the appellate record with the minute entry stating that the motion for new trial had been denied. In response, the trial court entered an order on July 13, 2006, denying the motion for new trial *nunc pro tunc* for the day the motion for new trial was argued, February 11, 2005.

The *nunc pro tunc* order denying the motion for new trial contained detailed findings of fact made by the trial court. These findings concern the basis of the trial court's decision to overrule Defendant's objection to wearing his physical restraints during trial. Interestingly, the *nunc pro tunc* order has absolutely no findings of fact regarding the issue of Defendant being forced to wear his prison garb during the trial. With respect to the "physical restraint" issue, the order provides as follows:

2.      Restraints in place during trial – There is a legal presumption against the necessity for in-court restraint during jury trial. There must be a clear showing of necessity for this action by a court due to less drastic measures not being sufficient to adequately control the defendant. This defendant has had to be restrained by Tennessee Department of Corrections [sic] transportation Officers during Court appearances in the several cases he has had in this Court. The use of a "shock belt" has been necessary on more than one occasion when he has been in Court. He has attempted to assault his own attorney while in the courtroom and had been restrained by Court or Police personnel. Numerous attorneys have asked to be relieved by this court due to defendants' [sic] abusive or threatening behavior. This Court held a brief meeting with counsel in chambers to discuss defendant's security situation in the courtroom. Based on all the forgoing factors, the Court decided that it was necessary to leave ankle restraints in position under counsel table. Defendant did not testify as a witness, and was not required [to] walk in the jury's presence. No prejudice occurred to defendant during trial.

A comparison of the *nunc pro tunc* order to the transcript reveals that the factual detail found in the *nunc pro tunc* order is not found in the transcript of the trial court's hearing on the motion for new trial. Following the hearing, the trial court initially stated that Defendant was not "shackled" with restraints during the trial and that he could not recall if Defendant wore his prison garb. The trial court asked Defendant's trial counsel, Mr. Booher, for clarification. The motion for new trial transcript reflected that Mr. Kent Booher represented Defendant at trial and Mr. Charles Hill represented Defendant on his motion for new trial. The transcript also contained the brief arguments of counsel, the above quoted statement from Mr. Booher declaring that Defendant was in fact wearing his shackles and prison garb at trial, and the trial court's denial of the motion for new trial which lacked any detailed factual findings.

Even accepting *arguendo* that there was a valid basis for Defendant to be restrained during the trial, there is nothing in the record to show that the trial court gave proper instruction to the jury about the restraints. *Willocks v. State*, 546 S.W.2d 819, 822 (Tenn. Crim. App. 1976). Furthermore, the undisputed fact is that the record does not reflect any valid reason to force Defendant, over his objection, to wear his prison garb during the trial. *Id.* Accordingly, Defendant is entitled to relief on this issue, his conviction is reversed, and the matter is remanded for a new trial.

## IV. Sufficiency of the Evidence

Although we must reverse the conviction and remand the case for a new trial, we will address Defendant's challenge that the evidence was insufficient to sustain the conviction of coercion of a witness. We will do so in the event of further appellate review, and because if this issue is meritorious, the conviction must be reversed and the charge dismissed. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

Defendant argues that the evidence was insufficient because his statements to Ms. Brewster were "so amorphous, no rational trier of fact could determine from the words testified to by the State's witnesses that Defendant[']s purpose was to cause false testimony." He also argues that his statement contained no clear inference that harm would befall Ms. Brewster if she did not testify falsely. When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated section 39-16-507 (2003) defines coercion of a witness as follows:

> A person commits an offense who, by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:
>
> (1) Testify falsely;
>
> (2) Withhold any truthful testimony, truthful information, document or thing; or
>
> (3) Elude legal process summoning the witness to testify or supply evidence, or to be absent from an official proceeding to which the witness has been legally summoned.

T.C.A. § 39-16-507(a)(1)-(3).

The purpose behind Tennessee Code Annotated section 39-16-507 is to punish persons "who, through coercion, impair the integrity or availability of witnesses who may be called to offer evidence at official proceedings." T.C.A. § 39-16-507, Sentencing Commission Comments. Coercion is statutorily defined as "a threat, however communicated, to . . . [c]ommit any offense." T.C.A. § 39-11-106(a)(3)(A). This Court has previously held that the actions of a defendant may give rise to an inference of the defendant's intent to influence a witness. *State v. Cedron Orgain*, No. 01C01-9808-CC-00334, 1999 WL 756197, at *3 (Tenn. Crim. App., at Nashville, Sept, 27, 1999) (no Tenn. R. App. P. 11 application filed) (citing *State v. Jonathan Moore*, No. 03C01-9602-CC-00057, 1997 WL 65729, at *4 (Tenn. Crim. App., at Knoxville, Feb. 13, 1997) (no Tenn. R. App. P. 11 application filed)).

After a thorough review of the record and considering the evidence in the light most favorable to the State, we conclude that the State met its burden of proof. The evidence sufficiently supports the jury's finding that Defendant was guilty of coercion of a witness. The proof at trial showed that Ms. Brewster was sitting in the Loudon County General Sessions Court waiting to testify against Defendant in a pending proceeding involving vehicular assault, reckless endangerment, theft, and assault charges. While Ms. Brewster was sitting in the courtroom, Defendant, standing in the door of the holding cell, pointed his finger at Ms. Brewster and said, "you can stop all this. You can change you're story." According to the officers who witnessed the exchange, Defendant's demeanor was threatening and angry and implied Ms. Brewster would be in "trouble" if she did not change her story. In addition, Ms. Brewster told officers on the day of the incident that she was scared to death of Defendant and what he might to do to her. By her own affidavit, Ms. Brewster swore that Defendant had threatened her and told her to change her story. *See State v. Bobadilla*, 181 S.W.3d 641, 644 (Tenn. 2005); *State v. Housler*, 161 S.W.3d 294, 298 (Tenn. 2005). We conclude that a rational trier of fact could have inferred that Defendant's actions were intended to communicate a threat to Ms. Brewster in an effort to coerce her not to testify

favorably to the State's case in the pending assault and theft proceeding. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.

_____

THOMAS T. WOODALL, JUDGE