Opinion issued September 28, 2006




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00515-CR




JOSEPH WISEMAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1021634




O P I N I O N
 
          A jury found appellant, Joseph Wiseman, guilty of the felony offense of injury
to a child and assessed his punishment at 35 years’ confinement. In two points of
error, appellant contends that the trial court violated his due process rights under the
Constitutions of the United States and Texas by (1) ordering him to be shackled for
the duration of his trial and (2) allowing prosecutorial misconduct during closing
arguments over appellant’s objections. 
          Because we sustain appellant’s first point of error, and reverse and remand for
a new trial, we need not consider appellant’s contentions regarding prosecutorial
misconduct. See Tex. R. App. P. 47.1. 
BACKGROUND
          The complainant, H.W., is appellant’s daughter. When H.W. was
approximately five months old, appellant was her primary caregiver from the morning
until the early evening. Appellant’s wife, Ursula Wiseman, worked at a temporary
job during the day. 
          In early November 2003, appellant telephoned Ursula at work and informed her
that H.W. had rolled off the couch and fallen to the floor. Appellant stated that H.W.
appeared uninjured and Ursula testified that H.W. seemed “fine” when Ursula
returned home from work that evening. Ursula’s temporary job concluded on
Monday, November 10, 2003. She remained home until the subsequent Friday
(November 14) when she was away from home between the early morning and early
evening, leaving H.W. under the sole care of appellant. When Ursula returned home
at approximately 5:30 p.m., H.W. was asleep and Ursula did not sense that anything
was wrong with her. 
          At approximately 4:00 a.m. the following morning, November 15, Ursula
awoke to give H.W. her morning bottle. H.W., however, refused the bottle and was
“screaming and real fussy.” This convinced Ursula that something was wrong with
H.W. and she took her by taxicab to Southwest Memorial Hospital (“Southwest”). 
During the cab ride to Southwest, H.W.’s left hand and arm began moving in a
jerking motion. Ursula later learned that these were the visual symptoms of a seizure. 
          Doctors at Southwest examined H.W., performed a CAT scan, MRI, and
various X-rays, and determined that she had sustained a multiple skull fracture to her
left side and a linear fracture to the back of her skull. In addition: (1) H.W.’s brain
was bleeding and swollen; (2) she had retinal hemorrhaging; and (3) the radius bones
in both her arms were fractured. At trial, various doctors testified that: (1) H.W.’s
head trauma had been sustained no more than a week prior to her admission to
Southwest on November 15 and her arm fractures no more than two weeks prior to
her admission; (2) H.W.’s skull fractures were consistent with her skull having been
struck against a hard surface, including a wall, table, or floor; and (3) the trauma
experienced by H.W. could not have been caused by her fall from the couch. 
          Appellant, the primary caregiver for H.W. during the time the testifying doctors
had stated that H.W.’s injuries occurred, was charged by indictment with the felony
of injury to a child. The indictment alleged that appellant intentionally and
knowingly caused serious bodily injury to H.W. by striking her with or against an
unknown object and by shaking her with his hand. Appellant’s case proceeded to a
trial by jury. Prior to voir dire, the following exchange occurred between the trial
court and appellant’s counsel: 
COUNSEL:I need to make one more objection on the record,
Judge; and that is Mr.—I just now noticed that Mr.
Wiseman was shackled. We’re going to be in front
of the jury. I assume the Court is going to require
that the shackles remain on Mr. Wiseman during the
time that we’re in front of the jury, am I correct?
 
TRIAL COURT:That’s correct.
 
COUNSEL:We’re going to object to that. I believe by doing so
in front of the jury, it denies Mr. Wiseman the
presumption of innocence and basically all aspects
of due process under the U.S. Constitution and
denies equal protection under the law. It denies him
effective assistance of counsel. It restricts his
freedom of movement, his ability to communicate
with counsel during the voir dire process. I think
any movement by Mr. Wiseman may clue the jury
into the fact that he’s chained, perhaps just because
of the noise of the movement. Nonetheless, I also
think that a juror who was brought to the bench and
looked back at Mr. Wiseman from my vantage point,
I’m standing at the bench where a potential juror
would be questioned, I’m looking back at Mr.
Wiseman, I can see the shackles.
 
TRIAL COURT:We will take care of that. We will get a box to place
in front of Mr. Wiseman’s legs. We’ve encountered
that request before and so that’s easy, to put a box in
front of his legs, make it impossible for any juror at
the bench to see that Mr. Wiseman is shackled. The
objection to Mr. Wiseman being shackled is denied. 
He will remain shackled throughout the entire trial. 
 
COUNSEL:The other request is to have anybody who can
articulate on the record any specific reason for
requiring that Mr. Wiseman be shackled in front of
the jury.
 
TRIAL COURT:Mr. Wiseman is in custody charged with a first-degree felony. He is not eligible for probation, and
the State is recommending 20 years in prison. It is
a very serious accusation, if the defendant is found
guilty, Mr. Wiseman is facing a substantial period of
time in prison, and for that reason, the court is going
to order him shackled during trial. 
 
COUNSEL:Thank you judge. 

          Appellant thus remained shackled throughout his trial—from voir dire through
the punishment phase. On the fourth day of the trial, shortly before appellant testified
in his own defense, the bailiff, outside the presence of the jury, advised appellant that
“It would be my suggestion that you take your right foot and put it slightly forward
of your left foot. That way it’s concealing those chains. Much better.” It appears
from the record that the bailiff’s statement was made in reference to the position of
appellant’s legs while appellant sat in the witness chair, although this is not entirely
clear. The jury found appellant guilty and this appeal followed. 
DISCUSSION
          In two points of error, appellant contends that the trial court violated his due
process rights under the Constitutions of the United States and Texas by (1) ordering
him to be shackled for the duration of the trial and (2) allowing prosecutorial
misconduct during closing arguments over appellant’s objections. 
          Did the Shackling of Appellant Violate his Right to Due Process?
          In his first point of error, appellant contends that the trial court violated his due
process rights under the United States and Texas Constitutions by requiring him to
wear shackles throughout his trial. Because appellant did not object at trial that his
shackling violated the Texas Constitution, he has waived his right to appeal on that
ground. See Tex. R. App. P. 33.1(a). We therefore consider appellant’s claims in the
context of fundamental due process rights guaranteed by the United States
Constitution. 
          The Fourteenth Amendment guarantees criminal defendants the right to a fair
trial. See Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692 (1976). Three
constituent elements of this guarantee are directly implicated by the shackling of a
criminal defendant during trial proceedings. See Deck v. Missouri, 544 U.S. 622,
630, 125 S. Ct. 2007, 2013 (2005). First, “the criminal process presumes that the
defendant is innocent until proven guilty.” Id. A defendant who is visibly shackled
does not have the benefit of this bedrock presumption and thus his right to a fair trial
is fundamentally compromised. Id. Second, “the Constitution, in order to help the
accused secure a meaningful defense, provides him with a right to counsel.” Id. at
631, 125 S. Ct. at 2013. The use of shackles may undermine this right by impeding
a defendant’s ability to effectively communicate with his attorney. Id. Third, “the
routine use of shackles in the presence of juries” compromises “[t]he courtroom’s
formal dignity, which includes the respectful treatment of defendants, reflects the
importance of the matter at issue, guilt or innocence, and the gravity with which
Americans consider any deprivation of an individual’s liberty through criminal
punishment.” Id. 
          For the reasons stated above, “[t]he law has long forbidden the use of visible
shackles during the guilt phase” of a criminal defendant’s trial. Id. at 626, 125 S. Ct.
at 2010. Despite this general rule, courts recognize that it may be necessary for
certain defendants to be restrained in exceptional circumstances. See id. at 629, 125
S. Ct. at 2012. Such circumstances may arise, for instance, when a defendant has
demonstrated a propensity to escape or has threatened or assaulted courtroom
personnel, thereby implicating an essential state interest, namely, courtroom security. 
See id. at 632, 125 S. Ct. at 2014; Long v. State, 823 S.W.2d 259, 282 (Tex. Crim.
App. 1991). Prior to the use of shackles, however, a trial court must make a specific
finding that they are necessary for reasons particular to a given case. See Deck, 544
U.S. at 627, 125 S. Ct. at 2011 (“[T]rial courts may not shackle defendants routinely,
but only if there is a particular reason to do so.”). 
          The employment of restraints, such as shackles, cannot be justified based on
a general appeal to the need for courtroom security or simple reference to the severity
of the charged offense. See Long, 823 S.W.2d at 283. Rather, a trial court must state
with particularity its reasons for shackling a defendant. Id. Such determinations are
reviewed under an abuse of discretion standard. Id. at 282. While mindful of
preserving a trial court’s discretion to determine whether restraints are necessary in
a given case, “a decision to apply leg shackles to [a] defendant ‘must be subjected to
close judicial scrutiny to determine if there was an essential state interest furthered
by compelling a defendant to wear shackles.’” United States v. Durham, 287 F.3d
1297, 1304 (11th Cir. 2002) (quoting Elledge v. Dugger, 823 F.2d 1439, 1451 (11th
Cir. 1987) (per curiam), withdrawn in part, 833 F.2d 250 (11th Cir. 1987)). 
          Here, the reasons offered by the trial court for shackling appellant amount to
mere generalities. According to the court, appellant was shackled because he (1) was
not eligible for probation, (2) was charged with a serious crime, and (3) was facing
a considerable amount of time in prison, if convicted. Such sweeping explanations
for shackling are prohibited, as they reflect not a case-by-case exercise of discretion,
but rather the application of a general rule that fails to account for circumstances
particular to a given defendant. See Deck, 544 U.S. at 634, 125 S. Ct. at 2015; Long,
823 S.W.2d at 283. As no findings were made that appellant was, inter alia, an
escape risk or a threat to courtroom security, we conclude that the trial court abused
its discretion in ordering appellant to remain shackled for the duration of his trial.
          Having concluded that the trial court abused its discretion by requiring
appellant to be tried in shackles, we must now determine whether appellant’s
shackling constituted harmful error.


 See Tex. R. App. P. 44.2(a). Because the use
of shackles implicates constitutional rights,


 we must “reverse a judgment of
conviction or punishment unless [we] determine[] beyond a reasonable doubt that the
[shackling] did not contribute to the conviction or punishment.” See id. Shackling
has been held to be harmful error when the shackles are detectable to the jurors or
when the use of restraints unduly restricts a defendant’s ability to communicate with
counsel. See Deck, 544 U.S. at 630–31, 125 S. Ct. at 2013. 
          The State contends appellant was not harmed because there is no evidence in
the record indicating that his shackles interfered with his ability to communicate with
counsel or were observable to the jury. The test, however, is whether we can
conclude beyond a reasonable doubt from reviewing the record that the shackles did
not contribute to appellant’s conviction or punishment. Here, we cannot draw that
conclusion. At voir dire, appellant’s counsel indicated to the trial court on the record
that “any movement by Mr. Wiseman may clue the jury into the fact that he’s chained,
perhaps just because of the noise of the movement.” Neither the court nor the State
responded to this contention. 
          Appellant’s counsel also stated, “I also think that a juror who was brought to
the bench and looked back at Mr. Wiseman from my vantage point” would see the
shackles. Although the court indicated that a box would be placed in front of
appellant’s legs to make it impossible for any juror at the bench to see that he was
shackled, shortly before appellant testified on his own behalf, the bailiff, outside the
presence of the jury, informed appellant that he should place his right foot slightly in
front of his left foot in order to conceal his leg chains. It appears that the bailiff’s
remark referred to the position of appellant’s legs while appellant was seated in the
witness chair, not at the defense table. On its face, the bailiff’s statement indicates
that appellant’s shackles were exposed. Because we are unable to conclude from the
record that appellant’s shackles were not heard or seen by the jurors and did not
constrain appellant’s ability to communicate with counsel, thus affecting the jury’s
assessment, we are unable to determine beyond a reasonable doubt that the trial
court’s error in shackling appellant did not contribute to his conviction or
punishment. See Tex. R. App. P. 44.2(a).
          Two additional factors lend support to our decision to sustain appellant’s first
point of error. First, as the United States Supreme Court has noted, the use of
shackles undermines the dignity of judicial proceedings. See Deck, 544 U.S. at 631,
125 S. Ct. at 2013. We recognize that courtroom security is a matter of utmost
importance and that shackling may be necessary in certain cases. However, shackling
a defendant without a demonstrated need compromises the formal dignity of a judicial
proceeding and leads to harmful collateral effects. Id. Such effects chiefly include
curtailing a defendant’s ability to communicate freely with counsel because of the
physical limitations imposed by shackles or simply because of the distraction and
embarrassment they cause the defendant. See id.; United States v. Durham, 287 F.3d
1297, 1304 (11th Cir. 2002) (“Even if the [shackles] placed upon the defendant are
not visible to the jury, they still may . . . confuse the defendant, impair his ability to
confer with counsel, and significantly affect the trial strategy he chooses to follow.”). 
          Second, harmless error review under Texas Rule of Appellate Procedure
44.2(a) may take into account the source of the error and “whether declaring it
harmless would encourage its repetition with impunity.” Davis, 195 S.W.3d at 317;
see also Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). Here, the
error originated from the trial court’s sua sponte order, and the trial court’s reasons
for shackling appellant are insufficient as a matter of law. See Garcia v. State, 919
S.W.2d 370, 381 (Tex. Crim. App. 1994). Appellant’s complaint is the third time that
this complaint has been asserted against the same trial court in less than three months
after an appellate court has found that the same trial court abused its discretion in
ordering a defendant to be shackled for trial. See Davis, 195 S.W.3d at 316; Grayson
v. State, 192 S.W.3d 790, 792 (Tex. App.—Houston [1st Dist.] 2006, no pet. h.). In
light of this history, “[w]e fear that declaring this error harmless may encourage
repetition of this blatantly unconstitutional action.” See Davis, 195 S.W.3d at 316
(citing Kelly v. State, 903 S.W.2d 809, 812 (Tex. App.—Dallas 1995, pet ref’d)
(finding harm based solely on need to prevent repetition of error that was committed
at least two other times in the past year)).
          For a defendant to be shackled in accordance with the United States
Constitution, the United States Supreme Court and the Texas Rules of Appellate
Procedure provide that (1) the trial court must make a defendant-specific finding that
a state interest justifies shackling; (2) every reasonable step must be taken to make
the shackles invisible to the jurors; and (3) a shackled defendant’s conviction must
be reversed unless we determine beyond a reasonable doubt that his shackling
constituted harmless error. See Tex. R. App. P. 44.2(a). Here, none of the criteria for
shackling a defendant were met. Indeed, the trial court’s repeated use of shackling
during the guilt-innocence phase appears to reverse these guidelines, such that a
defendant is shackled regardless of any individualized factors and it is incumbent
upon the defendant to demonstrate harm. In other words, the trial court’s approach
exclusively emphasizes the harm analysis at the expense of the fact that United States
Supreme Court precedent prohibits shackling altogether, absent a specific finding that 
shackling is necessary. We conclude that the trial court’s repeated practice of
shackling defendants is constitutional error.


 
          In sum, we hold that (1) the trial court abused its discretion in shackling
appellant for the duration of his trial and (2) harm emanated from this abuse of
discretion. Therefore, we sustain appellant’s first point of error.CONCLUSION 
          We sustain appellant’s first point of error and reverse and remand this case for
further proceedings. Consequently, we need not consider appellant’s second point
of error. See Tex. R. App. P. 47.1. 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Bland.
Publish. Tex. R. App. P. 47.2(b).