[Cite as *State v. Cobb*, 2013-Ohio-4630.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-T-0020** |
| DERRICK LAMAR COBB, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CR 00087.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final judgment of the Trumbull County Court of Common Pleas. Following trial, appellant Derrick Lamar Cobb was found guilty of felonious assault in violation of R.C. 2903.11(A), a felony of the second degree and kidnapping in violation of R.C. 2905.01(A)(3) and (C)(1), a felony of the first degree. On appeal, Cobb alleges that the trial court abused its discretion in not granting a continuance so that Cobb could obtain nicer clothes for trial. He also claims that the

verdict is against the manifest weight of the evidence. For the following reasons, the denial of the continuance and his conviction are affirmed.

{¶2} On December 19, 2011, Cobb and Debora Roberts, the victim, were drinking heavily and taking various amounts of cocaine as they visited several individuals throughout the later part of the afternoon and into the evening. At sometime between 8:00 p.m. and 9:00 p.m., Cobb and Roberts arrived at Cobb's brother's house where they obtained more cocaine from a local drug dealer. The two continued to use drugs into the night.

{¶3} According to Roberts, at around midnight, Cobb and Roberts began to argue. Cobb accused Roberts of taking his drugs and sleeping with his ex-girlfriend. To demonstrate to Cobb that she did not take any of his drugs or money, she stripped naked. She offered Cobb her clothes so that he could search for the money and drugs. Roberts claims that Cobb became enraged after she stripped and began to hit her. At one point during the confrontation, Cobb told Roberts he was going to kill her.

{¶4} Roberts attempted to escape by running to a bathroom; however, Cobb grabbed her by her hair and dragged her back to the living room area where he hit Roberts in the face, ribs, and arms. Whenever she fell to the ground he kicked her in the head. Throughout the confrontation in the living room Roberts claims Cobb continued to say he was going to kill her and at one point brandished a knife. Upon the brandishing of the knife, Roberts began to beg for her life. Eventually, Cobb calmed down and Roberts left the house at approximately about 2:00 a.m.

{¶5} Upon leaving the house, Roberts walked in her injured condition to a friend's house. After arriving, at approximately 5:00 a.m., the friend immediately called

the police. Warren Patrolman Eric Laproicina, arrived at Roberts' friend's house, where she identified Cobb as the assailant and explained how she became injured. An ambulance drove Roberts to Trumbull Memorial Hospital where the trauma surgeon on call diagnosed her with two broken ribs, a fractured nose and a partially collapsed lung. At the hospital, Roberts identified Cobb as the cause of her injuries to the trauma surgeon and was confined to a bed for three days while being hospitalized.

{¶6} Cobb's version of events is markedly different from Roberts' testimony starting from when the two arrived at Cobb's brother's house. Testifying on his own behalf, Cobb claimed that Roberts took some of her prescribed psychotropic medications as the two continued to ingest cocaine. Approximately 20 minutes later, Cobb claims Roberts speech started to become slurred and Roberts became belligerent. Roberts, according to Cobb, began to demand the additional cocaine that was left and that Cobb was stealing from her. Cobb responded to her demands by telling her to leave. When Roberts refused to leave, Cobb grabbed her by the pants and pushed her out the front door at sometime between 12:00 a.m. and 12:30 a.m.

{¶7} Immediately before voir dire and outside the presence of the jury, defense counsel objected to the trial going forward because his client would have to wear a T-shirt and jeans (which were the clothes he was arrested in) and sought more time for Cobb to furnish other clothes for trial. According to Cobb, the jail lost some nicer clothes that he intended to wear. The trial court judge told the state to use best efforts to find the clothes he had brought to the jail, treated defense counsel's objection as a motion for a continuance, and subsequently denied the motion.

{¶8} Appellant alleges the following as his first assignment of error that:

3

{¶9} "The trial court erred and abused its discretion by denying the appellant's motion for a short continuance of appellant's trial and the appellant suffered prejudice as a result."

{¶10} In reviewing the decision on a motion for a continuance, this court must be cognizant that the decision to grant or deny a continuance in a criminal proceeding lies within the sound discretion of the trial court. *State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶17. The trial court's decision must be more than "simply an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *State v. Mays*, 11th Dist. Trumbull No. 2001-T-0071, 2003-Ohio-63, ¶14 (citations omitted). To determine whether an abuse of discretion has occurred, the court must look to the following factors: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981).

{¶11} In our case, we cannot say the trial court abused its discretion. Previously, the Sixth District held that an indefinite delay of time is sufficient to find that the trial court acted within its discretion. *State v. Adkins*, 6th Dist. Lucas No. L-02-1190, 2003-Ohio-7250 ¶62. Here, it was not appellant's fault that his clothes were misplaced. Nevertheless, at the time of ruling, the trial court was not given a time when

4

the issue could be remedied by appellant to have alternative clothing available in the event his clothing was not located at the jail.

{¶12} In support of his appeal, Cobb directs our attention to *State v. Short*, claiming that forcing him to wear the clothes he was arrested in during trial would cause the jury to draw negative inferences about Cobb's respect for the jury and court. Cobb's reliance on *Short* is misplaced. In *Short*, the defense requested a continuance so that the defendant could obtain clothes to avoid wearing his prison garb to trial. 12th Dist. Warren No. CA2009-07-102, 2010-Ohio-1526, ¶25. After Short indicated he could procure the clothes he wanted from his mother within one week, the trial court ordered him to get in touch with his mother. *Id.* After several attempts to contact his mother failed, the trial court found that Short was dilatory by waiting until trial to procure clothes. The trial court proceeded to trial and the trial court gave a curative instruction to the jury about Short's appearance in prison garb. *Id.* ¶¶26, 30-31.

{¶13} Cobb's present situation is distinguishable from *Short*. Under the Fourteenth Amendment, the U.S. Supreme Court has held that the state cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L. Ed. 2d 126 (1976). Because the appearance of a jail uniform could unpalatably tempt jurors to disregard the presumption of innocence, it should be the preferred practice of trial courts to allow defendants to procure other clothes for trial, and use a curative instruction as a last resort.

{¶14} But where the defendant is not compelled to wear an identifiable prison uniform, the trial court's discretion in electing to grant or deny a continuance is

5

substantially broader. For instance, in *State v. Huling*, the Ninth District upheld the denial of a motion for a continuance in a similar situation to Cobb's because the defendant's prison uniform had no distinguishing features making it noticeable prison garb. 9th Dist. Summit No. 8792, 1978 Ohio App. LEXIS 8511, *4 (July 26, 1978).

{¶15} As there is no dispute that Cobb was not tried in prison garb, the only issue is whether it was error to deny an indefinite continuance and have him tried in civilian clothes not of his choosing. We cannot say it was unreasonable for the trial court to deny the continuance.

{¶16} Consequently, the first assignment of error is without merit.

{¶17} As his second assignment of error, Cobb alleges:

{¶18} "The appellant's convictions for felonious assault and kidnapping are against the manifest weight of the evidence."

{¶19} In determining whether evidence is sufficient to sustain a conviction, the reviewing court asks whether reasonable minds could differ as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978). If reasonable minds could differ as to whether each material element has been proven, a Crim.R. 29 motion for acquittal must be overruled. *Id.* at 263-64. The evidence adduced at trial and all reasonable inferences must be viewed in the light most favorable to the state. *State v. Maokhamphiou*, 11th Dist. Portage No. 2006-P-0046, 2007-Ohio-1542, ¶20.

{¶20} In contrast, a manifest weight challenge requires the reviewing court to play the role of a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court should be cognizant of the fact that the jury is in

the best position to assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus (1967). For an appellate court to overturn a conviction as being against the manifest weight of the evidence, it must be found that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶21}** Cobb attacks the verdict in two ways. Neither one is persuasive when considered individually or together. First, he claims that the various inconsistencies in Roberts' statements, lies and criminal record make her an incredible witness. Specifically, Cobb relies upon the differing accounts of Roberts and Cobb over who started the fight, a comparison of Roberts' and Cobb's criminal records, the trauma surgeon's testimony that some bruises on Roberts were old and that Roberts lied to both police and hospital personnel about her previous drug use that night. Though it is true that the trauma surgeon said one injury below the eye was old, the trauma surgeon also confirmed that several of Roberts' injuries were recently inflicted upon her. Moreover, Roberts explained that she initially lied about her previous drug use because it was illegal and she did not want to get in trouble. As for the criminal records and the genesis of the argument between Cobb and Roberts, the jury was entitled to credit Robert's testimony over that of Cobb and weigh how previous convictions affected their respective character for truthfulness.

{¶22} Cobb also attacks the verdicts because according to Roberts' version of events she left Cobb's brother's house at 2:00 a.m. but the police were called at 5:00 a.m., thereby leaving an unaccounted for three-hour time window. Again, Roberts explained that she did not keep track of time that night and did not have use of her cell phone which she normally uses to track time. Given Roberts' consistent identification of Cobb as the perpetrator of her injuries, the jury could have concluded that Roberts was mistaken as to the time she was assaulted, but not about the conduct and identity of the perpetrator.

{¶23} Finally, when both attacks on the verdict are considered together, they fail to show the jury lost its way. Neither attack attempts to show an element of either offense was not met. Rather, at best, Cobb's assignment of error seeks to demonstrate that the sum of all Roberts' inconsistencies, lies, and previous convictions makes her an incredible witness as to all elements of the offenses. Given the deference we must give to the jury in the area of credibility, we cannot agree. Cobb's second assignment of error is without merit.

{¶24} Accordingly, the judgment of the Trumbull County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.


8