ANN WALSH BRADLEY, J. (concurring).
¶ 71 I agree with the majority that the Strickland standard should be applied to ineffective assistance of counsel *53 claims in ch. 51 involuntary commitment proceedings. I further agree that the evidence is "overwhelmingly in favor of continuing J.M.'s commitment." Majority op., ¶ 55. Accordingly, I also conclude that "J.M. is unable to demonstrate a reasonable probability that the result of the proceeding would have been different but for his trial counsel's allegedly deficient performance." Id., ¶61.
¶ 72 However, I write separately to caution counsel in ch. 51 cases regarding the effect that prison garb and uniformed guards may have on such a proceeding. There is a dearth of case law surrounding ineffective assistance of counsel in the context of ch. 51 proceedings, making further guidance to the bench and bar alike beneficial. Indeed, this case represents our first announcement that a potential ch. 51 committee is entitled to the effective assistance of counsel in the first instance.
¶ 73 For the reasons set forth below, I urge ch. 51 counsel to be mindful of the unique effect that prison garb and uniformed officers could have on a proceeding where "dangerousness" is an element the county must prove.
¶ 74 Although J.M.'s counsel had asked the Wisconsin Resource Center to ensure J.M. appeared for trial in civilian clothing, it failed to do so. Despite J.M. being clothed in his prison uniform, counsel allowed the trial to continue without objection. Majority op., ¶ 12.
¶ 75 The United States Supreme Court has recognized that prison uniforms are "so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable *54 risk is presented of impermissible factors coming into play." Estelle v. Williams, 425 U.S. 501, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).
¶ 76 Prison clothing is an "unmistakable indication[ ] of the need to separate a defendant from the community at large." Holbrook v. Flynn, 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). It is "a sign that [a person] is particularly dangerous or culpable." See id. Such attire thus sends a strong signal to a jury not only that a person is criminally guilty, but that a person is dangerous.
¶ 77 In addition to wearing prison clothing, J.M. was accompanied throughout trial by two uniformed guards from the Department of Corrections. See majority op., ¶ 12. "[T]he sight of a security force within the courtroom might under certain conditions create the impression in the minds of the jury that the defendant is dangerous or untrustworthy." Holbrook, 475 U.S. at 569, 106 S.Ct. 1340 (internal quotation omitted).
¶ 78 The uniformed officers did not merely guard J.M. in the courtroom during the proceedings, but also flanked J.M. even as he testified from the witness stand. See majority op., ¶ 53. The image of this guarded closeness has the potential to prejudice the jury. See *55 People v. Hernandez, 51 Cal.4th 733, 121 Cal.Rptr.3d 103, 247 P.3d 167, 173-74 (2011) (explaining that although a deputy standing by a defendant on the witness stand is not a "human shackle," it is potentially prejudicial to the jury).
¶ 79 The facts alleged here give rise to the "certain conditions" forewarned in Holbrook. The combination of prison clothing and uniformed officers standing guard next to the witness stand may leave "the impression in the minds of the jury that the defendant is dangerous." See Holbrook, 475 U.S. at 569, 106 S.Ct. 1340.
*55 ¶ 80 These facts are particularly potent because dangerousness is an element that the county must prove in a ch. 51 commitment proceeding.[1] In re Helen E.F., 2012 WI 50, ¶ 20, 340 Wis. 2d 500, 814 N.W.2d 179 ; Wis. Stat. § 51.20(1)(a)1.-2. When a person subject to a ch. 51 proceeding appears before the jury surrounded by uniformed guards and wearing prison garb, the dangerousness element could be established without a word from the county's attorney. One look at a person in this condition may create a clear subtext: this man is dangerous.
¶ 81 Accordingly, although I join the majority opinion, I write separately to call attention to counsel's obligations in ch. 51 proceedings. I urge counsel to be mindful of the potentially harmful effects of prison garb and uniformed guards when "dangerousness" is an element that must be proven.
¶ 82 For the foregoing reasons, I respectfully concur.

In order to be subject to involuntary commitment pursuant to ch. 51, an individual must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or to others. In re Helen E.F., 2012 WI 50, ¶ 20, 340 Wis. 2d 500, 814 N.W.2d 179 ; Wis. Stat. § 51.20(1)(a)1.-2.